**GULFSTREAM AEROSPACE CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Slip Op. 97–137.**

**No. 94–02–00103.**

United States Court of
International Trade.

Sept. 19, 1997.

Grunfeld, Desiderio, Lebowitz & Silverman (Jonathan M. Fee, Atlanta, GA, David M. Murphy, New York City), for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Saul Davis); of counsel: Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, Washington, DC, for defendant.

### OPINION

MUSGRAVE, Senior Judge.

This action is before the Court on cross-motions for summary judgment pursuant to USCIT Rule 56. Plaintiff Gulfstream Aerospace Corporation ("Gulfstream") contests the denial by the United States Customs Service ("Customs") of protests seeking duty-free entry of civil aircraft parts.

### Background

The subject of this dispute is whether civil aircraft parts, imported by Gulfstream between November 1990 and August 1991, qualify for duty-free entry under the Agreement on Trade in Civil Aircraft ("ATCA"). When the parts in this case were entered, Gulfstream originally classified them under tariff headings which were not eligible for ATCA duty-free treatment. Customs reviewed Gulfstream's entered classifications and determined that Gulfstream's original classifications were incorrect on all but four

entries,[1] and re-classified the incorrect entries. The re-classification placed the parts under tariff headings which were eligible for duty-free treatment pursuant to the ATCA.

Duty-free treatment does not apply automatically to ATCA-eligible merchandise, however. Customs regulations require that an importer file documents certifying that the parts are in fact intended for use in civil aircraft and approved by the Federal Aviation Administration ("FAA") for such use. Further, the regulations require that these certifications be filed at the same time that entry summaries for the parts are filed. The regulation language states:

> At the time of filing the entry summary, the importer of civil aircraft parts shall submit a certificate [attesting to ATCA-eligibility].... Failure to provide the certification at the time of filing the entry summary or to have an approved blanket certification on file with the district director in the district where the entry summary is filed shall result in a dutiable entry.

19 C.F.R. § 10.183(c)(2) (1990). The regulations permit an importer to file the ATCA certifications either with each entry ("entry-by-entry") or to have on file a "blanket" certification covering all entries for up to one year. 19 C.F.R. § 10.183(c)(2), (d)(1)–(2) (1990).

Gulfstream had a blanket certification on file with Customs until just prior to the entry of the parts in this case. Gulfstream was prevented from maintaining its blanket certification by a Customs headquarter ruling, later overruled, and all the parts in this case were entered during the time when Customs improperly refused Gulfstream the use of a blanket certification. Thus, at the time of Customs' re-classification of the entered parts, there were no operative certifications on file with Customs; Gulfstream filed the required certifications entry-by-entry once Customs re-classified the merchandise.

Gulfstream's entry-by-entry ATCA certifications were not filed simultaneously with the entry summaries because the imported civil aircraft parts only became ATCA-eligible upon Customs' re-classification of them, which occurred after the entry summaries had been filed. Customs refused the certifications for lateness and denied duty-free treatment of Gulfstream's merchandise. Gulfstream protested under 19 U.S.C. § 1514, claiming that the parts should have been liquidated duty-free because Customs had denied Gulfstream the use of a blanket certification and re-classified the merchandise after entry summaries had been filed; thus Customs, not Gulfstream, had made it impossible to comply with § 10.183(c)(2). There is no dispute that Gulfstream's merchandise qualifies for ATCA duty-free treatment, but for Customs' application of the regulatory language. § 10.183(c)(2) stated: "Failure to comply [with the simultaneous filing requirement] ... shall result in a dutiable entry," which Customs held to mean that an importer who fails to file certifications and entry summaries simultaneously is barred from remedying the mistake. Customs invoked § 10.183(c)(2) and ruled that Gulfstream was precluded from any relief which would remedy the late filing and provide Gulfstream with duty-free treatment for its merchandise.

Gulfstream challenges the enforcement of the § 10.183(c)(2) language which precludes an importer from seeking relief for late filing. Gulfstream contends that the relief-

---

1. There are four entries in this action which Customs did not re-classify and which remained under Gulfstream's original non-duty-free tariff headings. In its protest, Gulfstream claims these four entries (Protest Nos. 1703–93–100036, 1703–93–100038, 1703–93–100042, and 1703–93–100043) should be classified under a new, duty-free-eligible tariff heading and given duty-free treatment. *See* Mem. of Pl. in Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. and in Opp'n to Def.'s Mot. for Summ. J., Statement of Material Facts, Exhibit B, *and* Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Cross–Mot. for Summ. J., Exhibit A at 1, n. 5–6; 2, n. 9; 4, n. 19.

As explained herein, the Court accepts Gulfstream's classifications as filed in its protests, including the four listed above. In addition, Customs has stipulated that certifications were properly filed with three other entry summaries, consolidated under Protest No. 1703–93–100097, and that those entries will be accorded ATCA duty-free treatment. Def.'s Mem. in Resp. to Pl.'s Opp'n to Def.'s Cross–Mot. for Summ. J. at 3, n. 3. Therefore those three entries are not part of this action.

preclusive language of the regulation had been invalidated by an earlier decision of this Court and that Customs is collaterally estopped from enforcing it. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a), and finds that Customs is estopped from enforcing the invalid portion of Customs Regulation 10.183(c)(2). The Court further finds that Gulfstream is entitled to relief, and Gulfstream's motion for summary judgment is granted.

### Standard of Review

■■■■ Decisions of the Customs Service are presumed to be correct, 28 U.S.C. § 2639(a)(1) (1994), but the presumption of correctness applies solely to factual questions and it is the duty of this Court to find the correct result.[2] The classification decision entails a three-step process including a factual and a legal inquiry, and an ultimate mixed question involving both factual and legal components. The factual inquiry is subject to the "clearly erroneous" standard while the purely legal and ultimate mixed questions are reviewed *de novo*. *Bausch & Lomb, Inc. v. United States*, 21 CIT ——, ——, 957 F.Supp. 281, 284 (1997).

Both parties have moved for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." CIT R. 56(d); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The party opposing summary judgment may not rest on its pleadings, but must respond with specific facts showing the existence of a genuine issue for trial." *Pfaff American Sales Corp. v. United States*, 16 CIT 1073, 1075 (1992) (citations omitted).

The Court of Appeals for the Federal Circuit considers the use of summary judgment as an efficient mechanism for the resolution of disputes.

The recent trilogy of Supreme Court cases establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557 (Fed.Cir.1988) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1349, 89 L.Ed.2d 538 (1986)). The Court finds that no genuine issue as to any material fact exists in this case.

### Discussion

I. The Customs Service is estopped from enforcing the invalidated language of 19 C.F.R. § 10.183(c)(2).

Customs denied Gulfstream's protest in this case because Gulfstream did not file documents, certifying its merchandise as civil aircraft parts, at the same time as it filed the entry summary documents for that merchandise. The requirement that the certifying documents and entry summaries be filed simultaneously is found in the language of Customs Regulation 10.183(c)(2) (1990). The regulation also precludes an importer from remedying a failure to file simultaneously. Gulfstream argues that Customs is collaterally estopped from enforcing the relief-preclusive portion of the regulation because that language was declared invalid by a previous decision of this Court. Customs argues that collateral estoppel does not apply against the government, or in the alternative, that collateral estoppel does not apply in classification cases. For the following reasons, the Court finds that Customs is collaterally estopped

---

**2.** *See Jarvis Clark Co. v. United States*, 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984) ("the court's duty is to find the correct result, by whatever procedure is best suited to the case at hand"), *Goodman Mfg., L.P. v. United States*, 13 Fed. Cir. (T) ——, ——, 69 F.3d 505, 508 (1995) (the statutory presumption of correctness attaches only to an agency's factual determinations), *and*

*Rollerblade, Inc. v. United States*, 15 Fed. Cir. (T) ——, ——, 112 F.3d 481, 486–87 (1997) (legal issues are not afforded deference under 28 U.S.C. § 2639 or under the administrative deference standard set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

from enforcing the invalidated language of Customs Regulation 10.183(c)(2).

The issue which Gulfstream seeks to prevent Customs from re-litigating was adjudged in *Aviall of Texas, Inc. v. United States,* 18 CIT 727, 861 F.Supp. 100 (1994), *aff'd, Aviall of Texas, Inc. v. United States,* 14 Fed. Cir (T) ——, 70 F.3d 1248 (1995). In *Aviall,* this Court found that Customs failed to comply with the Administrative Procedure Act ("APA") in promulgating 19 C.F.R. § 10.183. *Aviall of Texas, Inc. v. United States,* 18 CIT 727, 861 F.Supp. 100. Specifically, Customs did not make a portion of § 10.183(c)(2) available for public comment as required by the APA, and that portion, which first appeared in the final rule, was ruled invalid and unenforceable. *Id.* The invalidated portion reads as follows:

> The certification may not be treated as a missing document for which a bond may be posted. Failure to provide the certification at the time of filing the entry summary or to have an approved blanket certification on file with the district director where the entry summary is filed shall result in a dutiable entry.

19 C.F.R. § 10.183(c)(2) (1990); *Aviall of Texas, Inc. v. United States,* 18 CIT at 731, 861 F.Supp. at 104. The valid portions of § 10.183(c)(2) still require an importer to file the ATCA certifications simultaneously with the entry summary,[3] but *Aviall* held that Customs cannot preclude an importer from obtaining relief through other statutory or regulatory mechanisms to remedy or correct a failure to file simultaneously. *Id.,* 18 CIT at 731–33, 861 F.Supp. at 104–05, *aff'd, Aviall of Texas, Inc. v. United States,* 14 Fed. Cir (T) ——, 70 F.3d 1248 (1995).

In order for Customs to be collaterally estopped from enforcing the invalid portions of § 10.183(c)(2), Gulfstream must first overcome policy considerations set forth by the U.S. Supreme Court to establish whether

collateral estoppel is available between the parties. Then, Gulfstream must meet the elements of the three-prong test of collateral estoppel to determine whether the judgment of the previous case can be applied preclusively against Customs.

■ A. The Supreme Court has held that a plaintiff may collaterally estop a defendant from litigating an issue which the defendant has previously litigated unsuccessfully against another party. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 650–51, 58 L.Ed.2d 552 (1979). Before *Parklane,* collateral estoppel applied only in cases where both parties were parties to the prior action, and the fact that Gulfstream appeared in the *Aviall* case as *amicus curiæ* for the plaintiff against Customs, *see Aviall of Texas, Inc. v. United States,* 18 CIT 727, 861 F.Supp. 100, would not have satisfied this mutuality requirement. Since *Parklane,* however, collateral estoppel has not required mutuality. *Parklane Hosiery Co. v. Shore,* 439 U.S. at 326–31, 99 S.Ct. at 649–52. *Parklane* gave federal courts broad discretion to determine when collateral estoppel should apply. *Id.*

■ The Supreme Court has limited the use of non-mutual collateral estoppel in cases where, as here, the government is the defendant. *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984). The issue for which preclusive effect is sought must overcome three important policy criteria: (1) whether the issue had an opportunity to develop or "percolate" among the Circuit Courts; (2) whether the government's ability and discretion to seek review of unfavorable judgments would be compromised; and (3) whether policy changes in the executive administration have been accounted for. *Id.* The Court finds that none of these considerations bars the use of estoppel in this case.[4]

---

**3.** The main body of § 10.183(c)(2), which begins "At the time of filing the entry summary, the importer of civil aircraft parts shall submit a certificate . . . ," was properly promulgated and is valid.

**4.** Many courts and commentators have noted that application of the *Mendoza* criteria is complicated by the vagueness of the language of that

opinion and the uncertainty of its scope. *See, e.g., Colorado Springs Production Credit Assoc. v. Farm Credit Admin.,* 666 F.Supp. 1475 (D.Colo. 1987). Regardless of the breadth of interpretations of that opinion by others, the Court must view a request for summary judgment in the light most favorable to the opposing party. *Ugg Int'l, Inc. v. United States,* 17 CIT 79, 83, 813 F.Supp.

The first policy concern of the *Mendoza* test was based on the concern that application of collateral estoppel against the government would "substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *Id.* at 160, 104 S.Ct. at 572. However, since there is no other trial court which could hear a classification case, there is no other forum for legal principles to develop or "percolate." Additionally, the invalidity of the regulation in this case is based on Customs' failure to comply with the APA; there is no political policy to be implemented or legal principle to be developed. At issue here is a portion of a Customs regulation which has been declared invalid, not a Congressional statute.[5] Thus the Court finds that there is no violation of this policy consideration.

The second policy concern of *Mendoza* is also not implicated here. The *Mendoza* Court worried that the government would be forced to appeal every adverse decision for fear that it may be collaterally estopped by any judgment against it. This would usurp the discretion of the government to determine when and where it would exercise its resources. *Id.* No such concern exists here. Customs' ability and discretion to appeal was not compromised in the *Aviall* litigation— Customs did unsuccessfully appeal that decision—and Customs has the opportunity to appeal this decision. Again, it is Customs' failure to comply with the APA which makes the regulation invalid in this case. The use of collateral estoppel would not violate this *Mendoza* policy concern by chilling Customs' present and future ability to argue that the regulation is still valid, when in fact it is Customs' own failure to comply with the APA which prevents present and future enforcement of the invalid portions of

§ 10.183(c)(2). The Court finds no violation of the second *Mendoza* policy consideration.

The third and final policy concern of *Mendoza* is satisfied because no important government or administration policy shift has occurred, nor would a shift be impeded by the use of collateral estoppel in this case. By preventing Customs from re-litigating the issue in this case, the long-standing policy of requiring administrative agency compliance with the APA would be upheld. Forcing Customs to abide by the APA mandates does not affect the ability of the legislative branch to alter or the executive branch to implement the statute or method of APA compliance. Additionally, the policy concern of preserving judicial resources will be furthered by the use of collateral estoppel in this case: Customs will be both discouraged from refusing to comply with affirmed judgments of this Court, and encouraged to comply with the requirements of the APA. The application of collateral estoppel in this case would not prevent Customs from promulgating the invalid portions of § 10.183(c)(2) in compliance with the APA in the future.

The Court finds that all the requirements of *Parklane* and *Mendoza* have been met. However, that is only the threshold inquiry as to whether collateral estoppel is available between the parties in the present case. Next, the Court must determine whether collateral estoppel is applicable to the issue of the present case.

 B. To determine whether the *Aviall* judgment can be given preclusive effect against Customs in this case, the Court must first compare the facts which gave rise to the issue and outcome in *Aviall* with those presented by Gulfstream. Gulfstream must satisfy the following three tests: (1) whether

---

848, 852 (1993); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In this case, the opposing party is the Customs Service. Thus, the Court will consider *Mendoza* to stand for the proposition that collateral estoppel may not be applied against Customs ·except where certain, albeit vague, policy considerations are overcome. The Court will simply address the policy concerns directly.

**5.** "Judging the constitutionality of an Act of Congress is properly considered 'the gravest and

most delicate duty that this Court is called upon to perform.'" *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 319, 105 S.Ct. 3180, 3188, 87 L.Ed.2d 220 (1985) (citations omitted). Agency regulations which violate APA requirements "are to be given no legal effect" and "are entitled to no judicial recognition." *Alaniz v. Office of Personnel Management*, 728 F.2d 1460, 1470 (Fed.Cir.1984) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 313, 99 S.Ct. 1705, 1723–24, 60 L.Ed.2d 208 (1979)).

the issue determined in the previous litigation is identical to the issue now before the Court; (2) whether the issue was actually litigated and the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior case; and (3) whether the issue was necessary to the outcome in the previous decision. *Thomas v. General Services Admin.*, 794 F.2d 661, 664 (Fed.Cir.1986); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983).[6] The Court finds that all three requirements are met in this case.

The Court finds the following comparison of operative facts between the two cases sufficient to merit application of collateral estoppel. In *Aviall*, Customs denied plaintiff Aviall of Texas, Inc. ("Aviall") duty-free treatment for its imported civil aircraft parts. Customs based this decision on Aviall's failure to comply with § 10.183(c)(2). Aviall had on file a blanket certification, which would have provided automatic application of the ATCA to Aviall's eligible goods and duty-free entry for those goods. However, Aviall had allowed the blanket certification to expire and it was therefore invalid at the time the goods were entered and entry summaries filed. Aviall renewed the certification on the same day it was notified of the lapse, and additionally filed entry-by-entry certifications for the goods it had entered in the interim. But § 10.183(c)(2) specifically stated that failure to file (or have on file) these certifications at the same time as the filing of the entry summaries would preclude an importer

from the benefit of the ATCA as well as from any remedial measures to correct the filing error. On the basis of that language in § 10.183(c)(2), Customs refused to provide duty-free treatment to the entered goods. Although there was no dispute that the goods were in fact civil aircraft parts and met all the requirements for duty-free entry in furtherance of the policy established by the ATCA, Customs ruled that the violation § 10.183(c)(2) was simply an absolute bar to duty-free entry. *Aviall of Texas, Inc. v. United States*, 18 CIT at 727–28, 861 F.Supp. at 101–02.

In *Aviall*, this Court struck down the portion of § 10.183(c)(2) which precluded the plaintiff from obtaining relief for its filing mistake. *Id.*, 18 CIT at 733, 861 F.Supp. at 107. Customs Regulation 10.183 was published for comment in 1980, but at that time it did not include any language which would mandate dutiable entry and bar any relief. The sentence in 19 C.F.R. § 10.183(c)(2) containing this relief-preclusive language[7] first appeared to the public as part of the final rule promulgated in 1984.[8] Because the new language "establishe[d] a new substantive requirement penalizing importers for any failure to file the blanket certification," and was added to the original rule without an opportunity for public review, the Court held that it "was adopted in violation of the procedures mandated by the notice and comment provisions of the APA," and is invalid.[9] *Id.*, 18 CIT at 732, 861 F.Supp. at 105.

**6.** The Court recognizes that the collateral estoppel test is often analyzed in four, not three, parts. *But see Kroeger v. United States Postal Service*, 865 F.2d 235, 239 (Fed.Cir.1988). The Court has combined the "actually litigated" and "full and fair opportunity to litigate" tests into a single prong for convenience in this case.

**7.** The relief-preclusive language is found in the last sentence of 19 C.F.R. § 10.183(c)(2). The *Aviall* opinion struck down the last *two* sentences of § 10.183(c)(2); the first of these two sentences added the substantive change that an ATCA certification may not be treated as a missing document for which a bond may be posted. That language is also invalid since the original notice published for public comment did not include this rule and in fact indicated that certifications could be treated as missing documents. *Aviall of Texas, Inc. v. United States*, 18 CIT at 731, 861 F.Supp. at 104.

**8.** *Compare Proposed Rule: 19 C.F.R. Part 6 and 10 Civil Aircraft Agreement*, 45 Fed.Reg. 1633, 1637 (Jan. 8, 1980), *with* T.D. 84–109, 49 Fed. Reg. 19,450 (May 8, 1984), *reprinted in* 18 *Cust. Bull.* 271, 282–83 (1984).

**9.** The Court notes that even if collateral estoppel were unavailable, the fact remains that the relief-preclusive language in Customs Regulation 10.183(c)(2) was not properly promulgated under the APA and is invalid. The analysis which leads to that conclusion was fully set forth in the *Aviall* opinion, 18 CIT at 729–32, 861 F.Supp. at 103–05, and is incorporated herein. That decision is at the very least *stare decisis* as to any attempts by Customs to enforce the relief-preclusive language thereafter. *See City of Boerne v. P.F. Flores*, —— U.S. ——, ——, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997) ("... the Court will treat its precedents with the respect due them under settled principles, including stare decisis, and

Gulfstream, just like the plaintiff in *Aviall*, imported goods eligible for duty-free entry under the ATCA. Gulfstream had a blanket certification on file, but Customs had rejected Gulfstream's attempts to renew it and prevented Gulfstream from using a blanket certification for almost two years.[10] The merchandise debated in this case was entered during the time when Gulfstream was prevented from having a blanket certification on file, and Gulfstream was forced to file only entry-by-entry certifications. In addition, Gulfstream erroneously entered the goods in this case under noneligible tariff headings; Customs caught the error, changed the classifications, and liquidated the merchandise under tariff provisions which were eligible for ATCA duty-free treatment. However, Customs did not give the merchandise duty-free treatment despite their eligibility. Gulfstream protested, claiming duty-free treatment should apply, and filed the proper certifications claiming ATCA treatment along with its protests. The certifications were refused for the sole reason that they were not filed with the entry summaries,[11] despite the fact that Customs itself had made such simultaneous filing impossible by refusing Gulfstream the use of blanket certifications and re-classifying the merchandise after entry summaries had been filed.

Applying the first prong of the collateral estoppel test to this factual backdrop, the Court must determine whether the issue in the previous case is identical to the issue in this case. Gulfstream argues that it is similarly situated to the plaintiff in *Aviall*. Both Aviall and Gulfstream were importing civil aircraft parts, and seeking duty-free entry pursuant to the ATCA. The only divergence is one of a minor fact, but the legal result of

that fact is the same: Aviall originally sought duty-free entry under eligible tariff headings but failed to have a valid blanket certification on file at the time of filing the entry summaries, while Gulfstream was not even aware that its merchandise was ATCA-eligible until Customs re-classified the merchandise as such after the entry summaries had been filed. Aviall's failure to comply with § 10.183(c)(2) was due to inadvertence, while Gulfstream was prevented from meeting the filing requirements by Customs' refusal of a blanket certification and Customs' actions in changing the classifications. Both plaintiffs were barred from correcting the filing timing errors by the preclusive language of § 10.183(c)(2), which is invalid. To use this Court's previous descriptive, Customs "snared" both plaintiffs "in a classic 'gotcha.'" *Aviall of Texas, Inc. v. United States*, 18 CIT at 735, 861 F.Supp. at 107. The Court finds that the essential and primary legal issue in this case remains unchanged from *Aviall* —neither the APA nor the regulation has changed, nothing has altered the fact that the relief-preclusive language of § 10.183(c)(2) was improperly enacted and, therefore, Customs cannot bar Gulfstream from relief for late filing of ATCA duty-free entry certifications.

The second prong of the collateral estoppel test is easily met in this case. The government fully briefed and vigorously argued the issue of the validity of § 10.183(c)(2) before this Court and on appeal to the CAFC. Neither party in this case makes any intimation that Customs suffered from inadequate representation in *Aviall*. The Court finds that the validity issue was actually litigated, and Customs had a full and fair opportunity to

contrary expectations must be disappointed."); *American Lamb Co. v. United States*, 9 CIT 260, 262, 611 F.Supp. 979, 981 (1985), *vacated on other grounds*, 4 Fed.Cir. (T) 47, 785 F.2d 994 (1986) ("... stare decisis counsels the Court to follow [its] prior decisions. Defendant should address its arguments to the appellate court.") The fact that Customs refused Gulfstream's protest solely on the basis of this invalid regulation is enough by itself to deny Customs' motion for summary judgment, and weighs heavily in favor of granting Gulfstream's motion for summary judgment.

10. Customs prevented Gulfstream from using blanket certifications in HQ 222460 (Nov. 8, 1990). Customs admitted that its decision to do so was erroneous and reversed itself in HQ 223654 (Sept. 4, 1992).

11. Customs denied all of Gulfstream's protests by reference to a single ruling letter, HQ 224524 (July 19, 1993), which stated that "The presentation of the entry-by-entry certification[s] at the time of filing the protest cannot be accepted because [the preclusive language of] the regulations require[s] it to be submitted at the time the entry summary is filed."

conduct its litigation. The fact that Customs failed to *successfully* litigate the validity issue is not relevant to the test and does not bar, but rather supports, the application of collateral estoppel.[12]

The third prong of the collateral estoppel test is met because holding the relief-preclusive portion of § 10.183(c)(2) invalid was necessary to the *Aviall* decision. In order to receive duty-free treatment of civil aircraft parts, an importer must comply with the regulatory scheme Customs has implemented, including the filing of ATCA certifications. An importer can satisfy the ATCA certification requirement in two ways, either by filing the certifications at the same time as the entry summaries for the civil aircraft parts are filed, or, if the importer fails to file the certifications at the same time as the entry summaries, by satisfying the requirements of 19 U.S.C. § 1520 (1988) or 19 C.F.R. § 10.112 (1990), which allow an importer to correct the filing failure and obtain duty-free treatment for its civil aircraft parts.

In *Aviall*, it was Customs' position that the language in the last sentence of the final version of 19 C.F.R. § 10.183(c)(2) absolutely precluded an importer from recourse to the statutory and regulatory relief of § 1520 and § 10.112. *Aviall of Texas, Inc. v. United States*, 18 CIT at 729, 861 F.Supp. at 107; *see also* HQ 224524 (July 19, 1993), *and* HQ 716812 (October 27, 1981). The finding that the requirement was invalid was essential to a judgment in favor of the plaintiff in *Aviall* because only then could the Court proceed to analyze Aviall's claim for relief under § 1520 and § 10.112. *Aviall of Texas, Inc. v. United States*, 18 CIT at 727–29, 733, 861 F.Supp. at 101–06.

The Court determined that Aviall's actions constituted inadvertence, an error which is correctable under § 1520. *Id.*, 18 CIT at

734–35, 861 F.Supp. at 106–07. In response to Customs' argument that Aviall could not file the certifications late under § 10.112 because Aviall's failure to file constituted "negligent inaction," the Court also found that the remedial provisions of § 10.112 permit the late filing of free-entry documentation and afforded Aviall relief from Customs' denial of its protests. *Id.*, 18 CIT at 729, 732–33, 861 F.Supp. at 102, 105–07. Thus, Aviall was granted relief as a culmination of a chain of logic, from invalidating the language of § 10.183(c)(2) which precluded relief, to application of the statutory and regulatory mechanisms for relief.

The relief granted to the plaintiff in *Aviall* was analyzed and affirmed on appeal without an examination of the language of § 10.183(c)(2). *Aviall of Texas, Inc. v. United States*, 14 Fed. Cir. (T) ——, 70 F.3d 1248. Customs is now attempting to use that fact against Gulfstream, by arguing that based on the CAFC's decision not to review the validity issue, the holding of this Court in *Aviall* must have been mere *obiter dictum.* Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. and Cross–Mot. for Summ. J. at 26. An importer who fails to meet the first requirement of § 10.183(c)(2), filing the certifications at the same time as entry summaries, would not receive duty-free treatment for its civil aircraft parts, unless the importer could successfully meet the requirements for remedial relief under § 1520 or § 10.112. Customs' position in *Aviall* was that the "unless" had been removed by the last sentence of § 10.183(c)(2). Customs adamantly argued that under its interpretation of § 10.183(c)(2), failure to file certifications and entry summaries simultaneously resulted in dutiable entry, and that the Court was absolutely precluded from granting relief under § 1520 and § 10.112. Customs maintains this posi-

**12.** In *Cabot Corp. v. United States*, 12 CIT 664, 670–71, 694 F.Supp. 949, 954–55 (1988), the Court discussed other factors that can be considered at this stage of the collateral estoppel test. The Court noted that the previous judgment must have been final, and adverse to the party against whom the preclusive effect is sought in the present case. Additionally, the judgment should be one from which the adversely affected party could appeal. In *Cabot*, the earlier judgment had been in favor of the government, which prevented the government from appealing and thus collateral estoppel was not appropriate. *Id.* The *Aviall* decision was final, adverse to the Customs Service, and Customs could and did appeal; thus, all the *Cabot* factors weigh in favor of applying collateral estoppel in this case.

tion today based on the CAFC's decision not to review the validity issue.[13]

Customs' attempt at analytical prestidigitation ignores the essential contradiction its position creates. Customs argues on the one hand that § 10.183(c)(2) is valid and absolutely preclusive of relief to Gulfstream, because the CAFC declined to reach the validity issue. On the other hand Customs agrees that relief under § 1520 is available to an importer who violates § 10.183(c)(2), because the CAFC affirmed at least that much of the *Aviall* opinion. Customs cannot have it both ways—either an importer is or is not precluded by § 10.183(c)(2) from reaching relief mechanisms—but Customs must attempt to maintain these diametrically opposed arguments in order to challenge the third "necessity" prong of the collateral estoppel test. The CAFC's decision not to examine the validity issue does not give Customs a license to ignore this Court's pronouncement in *Aviall*, which was not reversed, vacated, remanded or modified in any part, *see infra* Part C. A reading of the *Aviall* opinion more than satisfies the Court that the validity issue was essential because the next analytical step could not have been taken without it, and was therefore "necessary" to the *Aviall* decision. Thus, the Court rejects Customs' argument. The Court finds that all three prongs of the collateral estoppel test are met and Customs is barred from enforcing the invalid language of 19 C.F.R. § 10.183(c)(2).

 C. Customs further argues that collateral estoppel does not apply to classification cases. The precise issue at hand—the issue which Customs is estopped from enforcing and re-litigating—is the validity of a Customs regulation, and not a dispute as to which between two or among several tariff headings should apply to the merchandise in this case.[14] However, the validity determination is directly related to Gulfstream's plea for duty–free entry of its aircraft parts.

"[T]he determination of whether certain merchandise is eligible for duty-free treatment under programs [which allow such duty–free entry] is a classification dispute, and, as such, a legal determination." *Executone Information Systems v. United States*, 14 Fed. Cir. (T) ——, ——, 96 F.3d 1383, 1385 (1996). The Court agrees that the case at bar is a classification case, but finds that the policy rationale which generally prevents the use of collateral estoppel in such cases is not applicable here and in fact supports the application of estoppel against Customs.

The Supreme Court has ruled that collateral estoppel is inapplicable to classification cases. *United States v. Stone & Downer Co.*, 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927), and its progeny established that the use of collateral estoppel in classification cases could cause "inequality in the administration of the customs law." *Id.* at 236, 47 S.Ct. at 619.

> If [an importer] can rely upon a conclusion in early litigation as one which is to remain final as to it, and not to be reheard in any way, while a similar importation made by another [importer] may be tried and heard and a different conclusion reached, a most embarrassing situation is presented. The [importer] which has by the principle of the thing adjudged obtained a favorable decision permanently binding on the government will be able to import the goods at a much better rate than that enjoyed by other [importers], its competitors.

*Id.* Because of the unique and continually shifting facts of merchandise classifications, "a determination of fact or law with respect to one importation is not *res judicata*[15] as to another importation of the same merchandise by the same parties." *Schott Optical Glass, Inc. v. United States*, 3 Fed. Cir. (T) 35, 36, 750 F.2d 62, 64 (1984).

However, the issue of the validity of a portion of a Customs regulation does not

---

**13.** Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. and Cross–Mot. for Summ. J. at 25–26.

**14.** Gulfstream is not contesting the tariff headings under which Customs has re-classified its imported civil aircraft parts. *See also supra,* footnote 1. Gulfstream seeks the addition of the

"C" prefix, indicating duty-free status, to the classifications which Customs has determined properly encompass Gulfstream's merchandise.

**15.** Collateral estoppel is a subset of *res judicata* principles. *See Cabot,* 12 CIT at 670, n. 5, 694 F.Supp. at 953–54, n. 5.

raise the policy concern addressed by Justice McReynolds above. It is not the classification of Aviall's merchandise to which Customs is bound today; *Stone & Downer* concerns would only be invoked if applying estoppel against Customs would force Customs to classify Gulfstream's merchandise under the same tariff headings as Aviall's imports. That is not the case here. On the contrary, applying collateral estoppel against the government in this case is in the interest of justice. Aviall and Gulfstream both imported civil aircraft parts and were denied the privileges of a statutory program granting them free-entry of those parts because of a failure to comply with an *invalid* regulation. Despite being similarly situated, they would receive differing treatment if § 10.183(c)(2) were held invalid as to one but not the other. To ensure equal treatment to Aviall, Gulfstream and all importers, the Court finds that the validity issue adjudicated in *Aviall* must be preclusive against the Customs Service.

This result is particularly necessary where Customs has refused to abide by the decision of this Court. Customs has not stipulated to the *Aviall* result, and is openly refuting this Court's holding that the relief-preclusive language of § 10.183(c)(2) is invalid.[16] Customs has hinted in its briefs and at oral argument that it believes the Court's pronouncement in *Aviall* was in "clear error" sufficient to merit overruling that determination. *See* Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. and CrossMot. for Summ. J. at 29, 31.[17] Customs correctly notes that it is permitted to attempt to show that a previous decision was "clearly

erroneous" and ought not be followed. *Schott Optical Glass, Inc. v. United States*, 3 Fed. Cir. (T) at 37, 750 F.2d at 64 (citations omitted). "The issue ... is not whether the arguments [in the previous case] are the same [as those presently before the Court] but whether the new evidence would show that the rejection of those arguments in the prior case was clearly erroneous." *Id.* Customs has not offered any evidence nor advanced any argument to indicate what "error" may be present in the *Aviall* decision.[18] This bald unsupported defiance of the rulings of this Court falls somewhere between wishful thinking and contempt. The Court holds that the Customs Service is enjoined from enforcing the invalidated language of § 10.183(c)(2) and precluding an importer from seeking relief from the simultaneous filing requirement.

Although Customs correctly notes and describes the propositions in *Stone & Downer* and *Schott*, those rules of law do not fit with this case. The Court finds that the considerations which caution against the use of collateral estoppel are clearly outweighed by the facts and setting of this case, and that Gulfstream has met all the requirements necessary to apply collateral estoppel against Customs. The Court also finds that a determination as to the validity of a Customs regulation is not prohibited but rather encouraged by the policy contemplated in *Stone & Downer*. The Court concludes that Customs is estopped from enforcing the relief-preclusive language of the last sentence of Customs Regulation 10.183(c)(2).

---

16. *See, e.g.*, HQ 546092 (Sept. 16, 1996), *and* HQ 952029 (Jan. 1, 1995).

17. Customs spends fifteen pages of its final brief trying to explain why Gulfstream is wrong to assert that the last two sentences of § 10.183(c)(2) are invalid. *See* Def.'s Mem. in Resp. to Pl.'s Opp'n to Def.'s Cross–Mot. for Summ. J. at 25–40. Customs misses the point on two counts. First, the validity issue has already been litigated and decidedly adversely against Customs in the *Aviall* decision; it is not Gulfstream's but rather this Court's assertion that § 10.183(c)(2) contains improperly promulgated and unenforceable language. Second, because of the *Aviall* judgment and under the *Schott* authority which Customs itself cites, Customs may not re-litigate the validity issue unless it can

show some "clear error" which the Court committed in reaching the *Aviall* decision. Customs' exposition fails to identify error in *Aviall*, and thus Customs' attempts at re-litigating that case are rejected.

18. In *Schott*, the CAFC found that the protesting importer should have been allowed to introduce new expert testimony which cast serious doubt on the Court's prior interpretation of a technical term. *Schott Optical Glass, Inc. v. United States* 3 Fed. Cir. (T) at 38, 750 F.2d at 64–65. The importer was able to make "an extensive offer of proof of what the new evidence would show." *Id.* Customs has not cast doubt on this Court's prior interpretation of clear APA mandates nor has Customs made an extensive offer of new evidence.

II. Customs erred in refusing to accept Gulfstream's ATCA certifications and in denying Gulfstream duty-free treatment.

Customs erred in denying Gulfstream's protest because its denial was based solely on regulatory language which is invalid and unenforceable. However, that is not enough by itself to attach the "C" prefix to the classifications of Gulfstream's merchandise and grant duty-free treatment to Gulfstream's civil aircraft parts. The valid portions of § 10.183(c)(2) still require filing certifications at time of entry.[19] Thus, Gulfstream must demonstrate that its filing of ATCA certifications along with its protests was proper. Gulfstream asserts that remedial relief is available under 19 U.S.C. § 1520, or 19 C.F.R. § 10.112. The Court finds that Gulfstream is entitled to duty-free treatment by operation of 19 C.F.R. § 10.112.

■■■■■ A. The Court finds that relief under 19 U.S.C. § 1520 is not appropriate in this case. An importer may request a reliquidation of an entry to correct "a clerical error, mistake of fact, or other inadvertence." 19 U.S.C. § 1520(c)(1) (1988). "[A] clerical error is a mistake made by a clerk or other subordinate, upon whom devolves no duty to exercise judgement, in writing or copying the figures or in exercising his intention." *PPG Industries, Inc. v. United States,* 7 CIT 118, 124, 1984 WL 3749 (1984) (citations omitted). A mistake of fact exists where a person understands the facts to be other than they are, such as where a fact exists but is unknown or where a person believes that something is a fact when in reality it is not. *Hambro Automotive Corp. v. United States,* 66 C.C.P.A. 113, 118, 603 F.2d 850, 855 (1979); *C.J. Tower & Sons of Buffalo, Inc. v. United States,* 68 Cust. Ct. 17, 22, 336 F.Supp. 1395, 1399 (1972), *aff'd,* 61 C.C.P.A. 90, 499 F.2d 1277 (1974). Inadvertence is defined as "an oversight or involuntary accident, or the result of inattention or carelessness, and even as a type of mistake." *Occidental Oil & Gas Co. v. United States,* 13 CIT 244, 246, 1989 WL 30441 (1989) (citation omitted). However, a mistake of law, which exists where a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts, is not remediable under § 1520. *Hambro Automotive Corp. v. United States,* 66 C.C.P.A. at 118, 603 F.2d at 855 (1979) (citations omitted).

The Court does not decide today whether Gulfstream's entered classifications were the result of a mistake of fact or law. It is sufficient to note that Gulfstream has not demonstrated that its entered classifications were due to a mistake of fact or other error remediable by § 1520. The Court can speculate as to what caused Gulfstream to originally enter the merchandise in this case under non-ATCA-eligible tariff headings, and the Court notes that Gulfstream, by virtue of the fact that it was denied the use of a blanket certification and forced to file entry-by-entry certifications, could easily have committed error. But § 1520 requires more than speculation. *ITT Corp. v. United States,* 12 Fed. Cir. (T) ——, ——, 24 F.3d 1384, 1387 (1994). Section 1520 must be satisfied by concrete evidence, although the required substantiation may be made at any time up to trial. *Id.,* 12 Fed. Cir. (T) at ——, 24 F.3d at 1386. The Court finds that Gulfstream has not alleged a mistake or error which would permit late filing of its ATCA certifications under § 1520.

Customs argues that Gulfstream cannot bring a § 1520 claim where it failed to raise the issue in its protest. The Court is unconvinced that it is precluded from examining all potential avenues of relief for an importer who properly files a § 1514 protest, and notes that "the CIT is to determine *de novo* whether a mistake has been made, as opposed to determining *de novo* whether all the requirements of § 1520 have been met," *Executone Information Systems v. United States,* 19 CIT ——, ——, 896 F.Supp. 1235, 1239 (1995). However, the Court need not and does not address this issue further, because the Court finds that Gulfstream has not demonstrated a mistake of fact or other error in its protest, its briefs or at oral argument on the motions for summary judgment. The Court also finds that it would be

---

**19.** "At the time of filing the entry summary, the importer of civil aircraft parts shall submit a certificate [attesting to ATCA-eligibility] . . . ." 19 C.F.R. § 10.183(c)(2) (1990).

an injustice to shoehorn Gulfstream into claiming it made a mistake when in fact the dispute in this case arose from Gulfstream following Customs' directions at every turn. Thus the Court concludes that Gulfstream is entitled to relief, but that § 1520 is an inappropriate mechanism for granting relief in this case.

 B. The Court finds that Gulfstream is entitled to relief under 19 C.F.R. § 10.112. Customs established this regulatory measure to ease the burdens associated with the merely ministerial filing acts required for duty-free or reduced duty entry:

> Whenever a free entry or a reduced duty document, form, or statement required·to be filed in connection with the entry is not filed at the time of the entry or within the period for which a bond was filed for its production, but failure to file it was not due to willful negligence or fraudulent intent, such document, form or statement may be filed at any time prior to liquidation of the entry, or, if the entry was liquidated, before the liquidation becomes final.

19 C.F.R. § 10.112 (1990). "[I]t is clear that the regulation was promulgated to make the privilege of free entry 'less onerous' by extending the time for filing of claim-supporting documents and, thereby, enabling free entry of merchandise that would otherwise have been excluded from such treatment." *Mattel, Inc. v. United States,* 67 C.C.P.A. 74, 77, n. 8, 624 F.2d 1076, 1079, n. 8 (1980) (quoting *Bertrand Freres, Inc. v. United States,* 47 Cust.Ct. 155, 159, 1961 WL 10284 (1961)).

In *Aviall,* the Court described § 10.112 as being *"remedial* in nature" and noted that:

> At the time [19 C.F.R. § 10.112] was promulgated, Customs stated that the purpose of the regulation was "to relieve certain existing restrictions to the filing of *free* entry documents." This regulation provides for the late filing of *duty free* entry documents or reduced duty documents *after* entry. The language of 19 C.F.R. § 10.112 does not limit its application to certain documents or exclude certain documents. In addition, Customs did not amend 19 C.F.R. § 10.112 when it promul-

gated the obligatory language of 19 C.F.R. § 10.183 nor did Customs state that 19 C.F.R. § 10.183 was an exception to the broad remedial effect of 19 C.F.R. § 10.112. Customs promulgated 19 C.F.R. § 10.112 to alleviate onerous filing requirements arising out of the narrow construction of duty entitlements; therefore, 19 C.F.R. § 10.112 should be liberally construed.

*Aviall of Texas, Inc. v. United States,* 18 CIT at 732, 861 F.Supp. at 105 (citations omitted) (emphasis in original). The Court stated that "19 C.F.R. § 10.112 explicitly provides for the late filing of documentation absent willful negligence," *id.* at n. 7 (citing *Mattel, Inc. v. United States,* 67 C.C.P.A. 74, 624 F.2d 1076), and that this relief would be available regardless of the mandatory nature of other regulations, *Aviall of Texas, Inc. v. United States,* 18 CIT at 732, 861 F.Supp. at 105. In conformity with Customs' stated goal of relieving filing restrictions, such as those found in the valid portions of 19 C.F.R. § 10.183(c)(2), the Court finds that Gulfstream is permitted to file its ATCA duty-free-entry certifications for the merchandise in this case after the filing of its entry summaries.

Despite the liberal policy of § 10.112, Customs advances two arguments to oppose the application of § 10.112 relief to Gulfstream, both of which fail. The first is that the CAFC in *Aviall,* finding that relief under 19 U.S.C. § 1520 was sufficient to remedy the plaintiff's claim, declined to reach the question of whether § 10.112 relief would be available to the plaintiff in that case. Therefore, Customs asserts, the Court cannot now apply § 10.112. This argument goes to the collateral estoppel question, however. The Court has found that Customs is collaterally estopped from enforcing the invalid language of 19 C.F.R. § 10.183(c)(2); it is not collateral estoppel that requires Customs to grant Gulfstream relief under § 10.112. Because the Court will analyze Gulfstream's eligibility for § 10.112 relief independently, Customs' first argument is rejected.

Next, Customs argues that § 10.112 cannot apply to this case because § 10.112 relief is only available when filing of documents is

required "in connection with" entry, as opposed to the phrase "at time of" entry. The valid portions of § 10.183(c)(2) require that duty-free claim-supporting documents must be filed at time of entry: "At the time of filing the entry summary, the importer of civil aircraft parts shall submit a certificate...." 19 C.F.R. § 10.183(c)(2) (1990). Customs attempts to elevate a purely semantic distinction between the phrases "in connection with" and "at time of" entry to a term of art. The Court finds that Customs' inconsistent usage of these terms over time and the history of § 10.112 render Customs' argument without merit.

The Court finds that Customs' interpretation of the phrase "in connection with" entry has been inconsistent over time, and Customs' actual practice indicates no intention to create a distinction between this phrase and "at time of" entry. In 19 C.F.R. § 141.0a (1990), Customs set forth definitions for terms which are "used in connection with the entry of merchandise." In that section, Customs defines "entry," "entry summary," and "filing," without any mention of or distinction from "at time of" entry, and without any indication that "in connection with" entry was being used other than colloquially. The fact that Customs uses the phrase "in connection with" in a variety of ways, see, e.g., HQ 654106 (Mar. 21, 1986) ("In connection with attempted false entry, (name deleted) plead guilty to criminal violations ..."), convinces the Court that Customs has not vested either phrase with legally significant meaning.

Customs has explicitly held that § 10.112 allows duty-free documentation to be submitted with a protest, even where the documentation was required at time of entry:

> [A]lthough the proper documentation ... establishing protestant's GSP claim, was not filed *at the time of entry*, as long as failure to file it was not due to willful negligence or fraudulent intent, the documentation may be filed at any time before liquidation or ... before liquidation be-

came final.... [I]f liquidation was timely protested, the protestant should be afforded an opportunity to submit documentation establishing free or reduced duty entry.

HQ 544455 (Mar. 14, 1995) (citing HQ 555269 (Dec. 20, 1990)) (emphasis added).

> The protestant was required to file, *in connection with its entries,* documents that would have established the eligibility of its merchandise for a duty reduction.... [T]he protestant did not file the necessary documents *at time of entry,* but submitted them [five months after liquidation].... 19 CFR 10.112[sic][ ] provides that if the importer fails to file the documents [ ] *at the time of entry* ... but failure to file was not due to willful negligence or fraudulent intent, then they may be filed at any time prior to [final] liquidation....

HQ 221603 (April 30, 1991) (emphasis added).

> 19 CFR 10.112 [sic] provides ... that a free entry document required *in connection with entry* ... may be filed before liquidation becomes final, if lack of presentation *at time of entry* was not willful or negligent. This section is applicable because [the regulation requiring reduced duty documentation] requires [the documentation] *at the time of entry.*

HQ 557707 (May 4, 1994) (emphasis added). Clearly Customs' usage of the phrases "in connection with" entry and "at time of" entry has been interchangeable and devoid of any legal distinction.

Customs cites no case, statutory or regulatory authority, or ruling letter to support its position. Customs' assertion that two previous cases of this Court created a distinction between the phrases "in connection with" and "at time of" is inapposite. In the cases Customs looks to for support, the Court distinguished between requirements to file documents on *entry,* which directly implicate § 10.112, and those regulations requiring filing before *export,* which do not invoke § 10.112; nowhere is there mention of "in connection with" entry or "at time of" entry distinctions.[20]

---

20. See Export Packers Co., Ltd. v. United States, 16 CIT 394, 795 F.Supp. 422 (1992), and F.W. Myers & Co., Inc. v. United States, 72 Cust. Ct. 133, 137, 374 F.Supp. 1395, 1399 (1974) ("Since the former [the phrase 'in connection with entry'] does not refer to the same period of time as the latter [the phrase 'before the exportation of the merchandise'], the two are unrelated....").

Customs has in the past asserted that § 10.112 cannot be applied in cases involving civil aircraft part importations, because the relief-preclusive language of 19 C.F.R. § 10.183(c)(2) mandated a dutiable entry for failure to comply with the simultaneous filing requirement therein. *See* HQ 556790 (Jan. 13, 1993), *and* HQ 223871 (July 24, 1992). By its own interpretation in these rulings, the relief-preclusive language of § 10.183—invalidated by this Court—is the only impediment to § 10.112 relief. The Court rejects the whole of Customs' arguments and finds nothing to bar the application of § 10.112 to an importer's entry of civil aircraft parts.

In order for Gulfstream to qualify for the remedial relief of § 10.112, it must first demonstrate that it filed the free-entry documentation prior to liquidation or prior to liquidation becoming final. 19 C.F.R. § 10.112 (1990). The entries in this case were liquidated, but Gulfstream filed its ATCA certifications prior to the liquidation becoming final. Gulfstream filed its ATCA certifications along with its properly filed protests of Customs' decision to liquidate the entries as dutiable. A properly filed protest stays the finality of a Customs liquidation if the protest is filed within ninety days after the notice of liquidation.[21] Gulfstream's merchandise was liquidated between January 4 and 28, 1993, and Gulfstream protested the liquidations on February 10, 1993, within the period required by § 1514. Gulfstream filed the ATCA certifications along with its § 1514 protests, and thus they are deemed filed before liquidation became final. The Court finds that Gulfstream has met the threshold inquiry of § 10.112 eligibility.

The Court must next examine whether Gulfstream demonstrated willful negligence or fraudulent intent sufficient to preclude § 10.112 applicability. Customs does not argue that Gulfstream committed willful negligence or had fraudulent intent in filing the ATCA certifications along with its protests instead of with the entry summaries. The Court finds that Gulfstream's actions do not constitute willful negligence or fraudulent in-

tent and that Gulfstream may claim relief under § 10.112.

The standard for willful negligence and fraudulent intent was set forth by the Court of Customs and Patent Appeals ("CCPA") in *Mattel, Inc. v. United States,* 67 C.C.P.A. 74, 624 F.2d 1076. The party seeking application of § 10.112 bears the burden of proving freedom from willful negligence and this burden must be met by concrete evidence. *Id.,* 67 C.C.P.A. at 78, 624 F.2d at 1080 (citations omitted). The CCPA found that *"positive action* demonstrating absence of willful negligence" is sufficient to meet the burden. *Id.,* 67 C.C.P.A. at 79, 624 F.2d at 1080 (emphasis in original).

In *Mattel,* the Customs Court found plaintiff Mattel, Inc. ("Mattel") to have intentionally not filed documents necessary for duty-free entry of its merchandise as required by a (valid) Customs regulation. The Court denied Mattel relief under § 10.112, but the CCPA disagreed, finding that "intentional" did not equate to "willful" under the § 10.112 standard. *Id.,* 67 C.C.P.A. at 76–77, 624 F.2d at 1078–79. Analogizing to federal tax law, the CCPA noted that the Supreme Court requires "bad purpose or evil motive to meet the statutory provision of willfulness." *Id.,* 67 C.C.P.A. at 78, 624 F.2d at 1080 (citations omitted). Despite the Customs Court's finding that Mattel had intentionally not filed the necessary documents, the CCPA found that Mattel's actions did not constitute evidence of "any bad motive or reckless disregard for the Customs Service in failing to file its free-entry, claim-supporting documents." *Id.,* 67 C.C.P.A. at 79, 624 F.2d at 1080. Rather, the fact that Mattel exercised its judicial remedies, and notified Customs that it was doing so, was "positive action" enough to satisfy the CCPA that there was no wilful negligence in its actions. *Id.*

The record clearly demonstrates a complete absence of bad purpose or evil motive on the part of Gulfstream. Gulfstream filed the certifications as soon as it became aware

21. "[D]ecisions of the appropriate customs officer ... as to—(2) the classification and rate and amount of duties chargeable ... shall be final and conclusive ... unless a protest is filed in accordance with this section." 19 U.S.C. § 1514(a) (1988). "A protest ... shall be filed with such customs officer within ninety days ...." § 1514(c)(2).

of Customs' decision to re-classify the merchandise under ATCA-eligible tariff headings, the first moment in time at which the merchandise was eligible for duty-free status requiring the filing of ATCA certifications. Even if Customs could prevent the operation of § 10.112 by holding an importer to the "intent" it had to enter merchandise under its initial classifications while liquidating those entries under different classifications, that argument would fail because "intentional" does not rise to the level of willful negligence, *see id.*, 67 C.C.P.A. 74, 624 F.2d 1076.

The Court is further influenced by the fact that Gulfstream continued to challenge Customs' 1990 ruling prohibiting Gulfstream from using blanket certifications, in an effort to prevent precisely the type of problem which Customs' re-classification decision created here. Additionally, like the plaintiff in *Mattel,* Gulfstream exercised its judicial remedies, and notified Customs of that decision. The Court finds that Gulfstream has demonstrated "positive action" and was not willfully negligent or intentionally fraudulent in this case. Thus, Gulfstream should be granted § 10.112 relief.

The Court concludes that the clear language of § 10.112, the policy buttressing its implementation, the cases and ruling letters interpreting it, and the facts of this case offer Gulfstream the ability to claim duty-free status for its merchandise. The Court finds Gulfstream's ATCA certifications should have been accepted, and that, pursuant to them, the "C" prefix denoting duty-free status should be added to the classifications of the merchandise listed in all of Gulfstream's protests in this action. The Court orders Customs to re-liquidate the merchandise in this action duty-free.

### III. Gulfstream is entitled to summary judgment and duty-free entry of its merchandise.

Customs has raised a question "as to the substantive sufficiency of the customs forms which have been filed herein," [22] namely, the validity of Gulfstream's ATCA certifications. Customs asserts that there is no evidence that the civil aircraft parts were in fact certified for use in civil aircraft by the FAA as required by the valid portions of 19 C.F.R. § 10.183. The Court disagrees for two reasons. First, the record indicates that the certifications are complete. The valid portions of Customs Regulation 10.183 set forth the form the certification is to take and include the requirement that:

> The article(s) ... has (have) been approved for use in civil aircraft by the Administrator of the Federal Aviation Administration ... [or that] [a]n application for approval for use in civil aircraft for the article(s) ... has been submitted to, and accepted by, the [FAA].

19 C.F.R. § 10.183(d) (1990). Gulfstream attested to FAA certification as required. Customs' rejection of the Gulfstream's ATCA certifications was not due to a belief that Gulfstream was mistaken or fraudulent in its assertion that its civil aircraft parts had FAA approval. A review of past cases and Customs rulings demonstrates that Customs has never challenged the veracity of Gulfstream's certifications nor refused Gulfstream duty-free entry for failure to properly and truthfully attest to FAA approval of its civil aircraft parts.[23] The record shows that Gulfstream's ATCA certifications were complete and would have been accepted but for Customs' application of an invalid regulatory mandate.

Second, Customs, by its own ruling, allows Gulfstream to correct the assertions in its certifications even after final liquidation. In HQ 223654 (Sept. 4, 1992),[24] Customs held that where an item originally intended for use in civil aircraft is later diverted to use in a military aircraft manufacture—a use which

---

**22.** *See Bertrand Freres, Inc. v. United States,* 47 Cust. Ct. at 160.

**23.** The Court need not, but is willing, to take judicial notice of the fact, as ably pointed out by plaintiff at oral argument, that the aircraft which Gulfstream manufactures are among the most respected and well-known in the world, and that

it is therefore unreasonable to suggest a lack of FAA approval. *See* Fed.R.Evid. 201 (1996).

**24.** It is this ruling letter in which Customs reversed its earlier position and reinstated Gulfstream's right to file a blanket certification for future imports of civil aircraft parts. *See supra,* footnote 10.

would not meet FAA approval—the importer will be deemed to have met the ATCA certification requirement so long as the original certification was filed in good faith.

The issue raised is that of intent. In accordance with the statute, the certification pledges that the imported merchandise is imported for use in civil aircraft and that it will be so used. So long as an importer has the requisite good faith intent at the time merchandise is entered under a certification, there is compliance with the statute.

HQ 223654 (Sept. 4, 1992). The record is devoid of any evidence of bad faith on the part of Gulfstream. The Court dismisses Customs' rear-guard argument and finds that it does not raise a genuine issue of fact which would prevent the application of summary judgment to this case.

The Court finds summary judgment to be applicable to this case and the appropriate medium for granting Gulfstream relief in this case. Because Customs denied Gulfstream's protest solely on the basis of an invalid regulatory mandate, a mandate which Customs is estopped from enforcing, the protests were wrongfully denied. Gulfstream has satisfied the elements necessary to remedy the controversy in this case. The Court therefore finds that all of Gulfstream's protests should have been granted and the "C" prefix attached to the classifications therein, and the Customs Service shall re-liquidate the entries duty-free.

### *Conclusion*

For the foregoing reasons, plaintiff's motion for summary judgment is granted.

