# United States Court of Appeals for the Federal Circuit

---

**FORD MOTOR COMPANY,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-1186

---

Appeal from the United States Court of International Trade in No. 03-CV-0115, Senior Judge Judith M. Barzilay.

---

Decided: May 3, 2013

---

STEPHANIE A. DOUGLAS, Bush Seyferth & Paige PLLC, of Troy, Michigan, argued for plaintiff-appellant. Of counsel on the brief were ROBERT B. SILVERMAN, NED H. MARSHAK, JOSEPH M. SPRARAGEN and FRANCES P. HADFIELD, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, of New York, New York. Of counsel was PAULSEN K. VANDEVERT, Ford Motor Company, of Dearborn, Michigan.

EDWARD F. KENNY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department

of Justice, of New York, New York, argued for defendant-appellee. Of counsel on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director; BARBARA S. WILLIAMS, Attorney in Charge, International Trade Field Office, New York, New York. Of counsel was BETH C. BROTMAN, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

––––––––––––

Before NEWMAN, PROST and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* REYNA.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

REYNA, *Circuit Judge.*

Ford Motor Company ("Ford") appeals from a final judgment of the Court of International Trade (the "Trade Court") upholding the denial by the U.S. Customs and Border Protection ("Customs") of Ford's claims for post-entry duty refunds. *See Ford Motor Co. v. United States* ("*Ford III*"), 800 F. Supp. 2d 1349 (Ct. Int'l Trade 2011). We agree with the Trade Court that 19 U.S.C. § 1520(d) requires Ford to file the relevant certificates of origin ("COs") within one year, and that its failure to do so could not be excused by 19 C.F.R. § 10.112. Nevertheless, because Customs has failed to adequately explain why it treats post-entry claims for refunds under § 1520(d) differently depending on whether they were filed on paper or through the reconciliation program,[1] we vacate the Trade Court's judgment and remand for further proceedings.

––––––––––––

[1] As we discuss below, the reconciliation program is an alternative means of filing post-entry NAFTA refund claims under § 1520(d).

BACKGROUND

A

The North American Free Trade Agreement ("NAFTA") seeks to "eliminate barriers to trade in, and facilitate the cross-border movement of, goods and services between" the United States, Canada, and Mexico. NAFTA art. 102(1). One way in which it accomplishes this is by allowing NAFTA origin qualifying goods to enter into the United States duty free. *See* NAFTA art. 502. To obtain this preferential tariff treatment, an importer must:

> a) make a written declaration, based on a valid Certificate of Origin, that the good qualifies as an originating good;
>
> b) have the Certificate in possession at the time the declaration is made; [and]
>
> c) provide, on the request of [Customs], a copy of the Certificate . . . .

NAFTA art. 502(1). The NAFTA also provides a mechanism by which parties who, for whatever reason, do not seek preferential treatment on entry may nevertheless obtain it later:

> Each Party shall provide that, where a good would have qualified as an originating good when it was imported into the territory of that Party but no claim for preferential tariff treatment was made at that time, the importer of the good may, no later than one year after the date on which the good was imported, apply for a refund of any excess duties paid as the result of the good not having been accorded preferential tariff treatment, on presentation of:
>
> a) a written declaration that the good qualified as an originating good at the time of importation;

b) a copy of the Certificate of Origin; and

c) such other documentation relating to the importation of the good as that Party may require.

NAFTA art. 502(3). Congress codified this provision in § 1520(d):

Customs Service may, *in accordance with regulations prescribed by the Secretary*, reliquidate an entry to refund any excess duties . . . paid . . . for which no claim for preferential tariff treatment was made at the time of importation if the importer, *within 1 year after the date of importation*, files, in accordance with those regulations, a claim that includes—

(1) a written declaration that the good qualified under the applicable rules at the time of importation;

(2) *copies of all applicable NAFTA Certificates of Origin* (as defined in section 1508(b)(1) of this title), or other certificates or certifications of origin, as the case may be; and

(3) such other documentation and information relating to the importation of the goods as the Customs Service may require.

19 U.S.C. § 1520(d) (emphases added). The requirements of the statute are essentially identical to the requirements set forth in the NAFTA. Pursuant to this statute, Customs has promulgated regulations setting forth the procedures for filing post-entry claims for refunds and requiring additional documentation:

A post-importation claim for a refund shall be filed by presentation of the following:

(1) A written declaration stating that the good qualified as an originating good at the time of

importation and setting forth the number and date of the entry covering the good;

(2) Subject to § 181.22(d) of this part, a copy of each Certificate of Origin . . . pertaining to the good;

(3) A written statement indicating whether or not the importer of the good provided a copy of the entry summary or equivalent documentation to any other person. . . .

(4) A written statement indicating whether or not the importer of the good is aware of any claim for refund, waiver, or reduction of duties relating to the good within the meaning of Article 303 of the NAFTA . . . .

(5) A written statement indicating whether or not any person has filed a protest or a petition or request for reliquidation relating to the good under any provision of law . . . .

19 C.F.R. § 181.32(b). In addition to the two documents specified in the statute, these regulations require three additional written statements.

As is evident from the above, the treaty, statute, and regulations each require that a post-entry claim for refund of duties must be filed within one year of importation and must include the relevant COs. The regulations provide a penalty for late filing: a claim may be denied "if the claim was not filed timely, if the importer has not complied with the requirements of [19 C.F.R. §§ 181.31 - .33, or] if the Certificate of Origin . . . cannot be accepted as valid . . . ." 19 C.F.R. § 181.33(d). Similarly, "[i]f the importer fails to comply with any requirement under this part, *including submission of a Certificate of Origin . . . ,* the port director may deny preferential tariff treatment to the imported good." 19 C.F.R. § 181.23(a) (emphasis

added); *see also* 19 C.F.R. § 181.31 (stating that Customs may refund duties subject to § 181.23).

Although Customs may deny claims when the relevant COs are not filed within one year, this requirement may be waived. *See* NAFTA art. 503(c) ("[A] Certificate of Origin shall not be required for . . . an importation of a good for which the Party into whose territory the good is imported has waived the requirement for a Certificate of Origin[.]"). Customs has waived the requirement to present certificates for:

> (i) An importation of a good for which the port director has in writing waived the requirement for a Certificate of Origin because the port director is otherwise satisfied that the good qualifies for preferential tariff treatment under the NAFTA;
>
> (ii) A non-commercial importation of a good; or
>
> (iii) A commercial importation for which the total value of originating goods does not exceed US$2,500 . . . .

19 C.F.R. § 181.22(d)(1). This court has acknowledged § 181.22(d)(1) as an exercise of Customs' waiver power, concluding that although no reference to waiver appears in § 1520(d), the regulations provide for waiver either under 19 C.F.R. § 181.22(d)(1) or via the reconciliation program. *Ford Motor Co. v. United States* ("*Ford II*"), 635 F.3d 550, 555-56 (Fed. Cir. 2011). Indeed, Customs' power to waive the timely filing of COs was one of the grounds this court relied on in determining that the filing of COs was not a jurisdictional requirement. *See id.* at 557.

## B

In addition to the waiver provisions found in § 181.22, Customs has implemented the NAFTA's waiver authority

via the "reconciliation program."[2] This program is separate from, but coexists with, the procedures described above for obtaining refunds under § 1520(d). Any importer may apply to participate in the program. The only requirements are (1) that participants file entry summaries through the Automated Broker Interface ("ABI") and (2) that participants possess adequate bond coverage. Millions of entries have been processed through the program.

The reconciliation program was developed through a series of notices in the Federal Register over a period of many years. *E.g.*, Announcement of National Customs Automation Program Test Regarding Reconciliation, 62 Fed. Reg. 5673 (Feb. 6, 1997). Customs publishes a compliance guide ("the Guide") that consolidates information about the program. *See* ACS Reconciliation Prototype: A Guide to Compliance, *available at* http://www.cbp.gov/linkhandler/cgov/trade/trade_program s/reconciliation/reference_desk/acs_recon_guide.ctt/acs_re con_guide.pdf. The Guide is perhaps the best single source for information about the program.

The reconciliation program is designed to address the problem that at the time of importation, certain information might not yet be known. According to the Guide,

> More and more transactions involve final adjustments to an import price that may not be known until months after the merchandise is purchased and imported. Filers and ports previously made their own special arrangements to reduce the administrative burden of such adjustments. Howev-

---

[2] This program is also known as the "reconciliation prototype." The parties have used the terms "reconciliation prototype" and "reconciliation program" interchangeably. For consistency, this opinion will use the term "reconciliation program."

er, these local, informal versions of "reconcilia-
tion" were problematic because they varied a
great deal from place to place, often had no legal
basis, and lacked adequate financial controls.

*Id.* at 4. Relevant to this appeal, one such piece of infor-
mation is the NAFTA origin eligibility of an imported
item. *Id.* at 12. This is especially true in the case of goods
that involve high numbers of inputs and components,
such as automotive goods. Indeed, the reconciliation
program was established to facilitate trade in goods
important to NAFTA trade, such as the automotive sector.

Filing a NAFTA claim under the reconciliation pro-
gram requires two steps: flagging the entry summary and
filing the reconciliation. *Id.* at 9. In the flagging step,
participants file entry summaries as they normally would
through the ABI. Each entry submitted through the ABI
can be flagged for reconciliation in up to four categories.
One of those categories indicates that the importer desires
a post-entry refund of duties pursuant to § 1520(d). The
portions of each entry that are not flagged for reconcilia-
tion may be liquidated independently of those that are
flagged, and may be protested separately. The flagged
portions remain open and outstanding.

The second step of the reconciliation process is the fil-
ing of reconciliations. A reconciliation finalizes outstand-
ing information associated with previously flagged
entries. As in § 1520(d) and § 181.31, NAFTA reconcilia-
tions—that is, reconciliations that seek to finalize a post-
entry claim for refund under § 1520(d)—must be filed
within one year of the import date. They also must con-
tain the three additional certifications required by
§ 181.32(b)(3)-(5). *Compare* Guide at 67, *with*
§ 181.32(b)(3)-(5). Importantly, however, Customs has
waived the requirement that the COs must be filed within
one year of importation. *See* Modification of Nat'l Cus-

toms Automation Program Test Regarding Reconciliation, 62 Fed. Reg. 51181, 51182 (Sept. 30, 1997); Guide at 12.

C

With this background in mind, we turn to the facts of the instant case. Ford imports large numbers of automotive goods into the United States, many of which qualify for duty free entry under the NAFTA. Following the initial implementation of the NAFTA, it took several years for Ford and other automotive importers to develop a process for generating COs in advance of shipment in order to claim NAFTA preference at the time of entry. As a result, by April 27, 1998, Ford had filed over 2000 post-entry claims for refunds of duties paid on NAFTA-eligible goods.

Prior to the introduction of the reconciliation program, there was no paperless process for submitting the high volume of claims that producers such as Ford were required to submit. Because Ford was involved in the development of the reconciliation program, it was aware that such a system would eventually be put into place. In the interim, Ford attempted to work with the various ports of entry to develop a process for the electronic submission of § 1520(d) claims under which the requirement to file COs within one year would be waived. Some ports allowed Ford to make post-entry claims without submitting the COs. Ford attempted to obtain a similar agreement with the port of Detroit, but no agreement was reached. Nevertheless, for a period of time Ford believed that the Detroit port had authorized it to submit claims electronically. As a result, Ford filed over 600 post-entry claims for refund electronically without submitting a hard copy CO.

This case concerns transactions in which Ford imported goods, paid the tariffs, and later filed a claim for refund. In the transactions at issue, Ford filed its claim before the one-year deadline but did not file the corre-

sponding COs until after the deadline. The parties have agreed to use one entry, No. 231-2787386-9 ("the Entry"), as a test case for these transactions. The Entry was imported into the United States on June 27, 1997, via the Detroit port of entry. Ford did not assert at the time of entry that its goods were eligible for preferential treatment under the NAFTA. Ford electronically filed post-entry duty refund claim number 3801-98-351235 on May 13, 1998, less than one year after the date of importation, asserting that it was entitled to reliquidation and a duty refund under 19 U.S.C. § 1520(d)(ii). The May 13 claim did not, however, include copies of the COs, which Ford submitted on November 5, 1998, over a year after the date of importation. Ford had not obtained a written waiver under the terms of § 181.22(d)(1). On May 21, 1999, Customs denied Ford's claim, stating that "[t]he NAFTA Certificate of Origin was not furnished within one year of the date of importation." J.A. 135. Ford protested the denial of the claim, and Customs denied the protest in August 2002. HQ 228654 (Aug. 29, 2002), *available at* 2002 WL 31641984.

Ford challenged Customs' decision in the Trade Court. The Trade Court concluded that the requirement to file a CO within one year was jurisdictional and dismissed Ford's challenge. *See Ford Motor Co. v. United States* ("Ford I"), No. 03-00115, 2010 WL 98699 (Ct. Int'l Trade Jan. 12, 2010). This court reversed, holding that "so long as notice of a party's § 1520(d) claim is timely filed within one year of importation, failure to adhere to § 1520(d)'s formalities, such as filing a certification of origin, will not deprive the Trade Court of jurisdiction . . . even if such failure may end up being dispositive of the party's claim." *Ford II*, 635 F.3d at 557. We explicitly declined to decide whether Customs was required to accept Ford's late-filed COs under 19 C.F.R. § 10.112. *Id.* at 558.

On remand, the Trade Court again upheld Customs' determination, noting that "§ 1520(d) and the implement-

ing regulations require importers to file within one year of importation copies of applicable certificates of origin." *Ford III*, 800 F. Supp. 2d at 1352. The court rejected Ford's argument that 19 C.F.R. § 10.112 could excuse the late filing of COs. *Id.* at 1353-54. Ford had also argued that Customs improperly treated claims under § 1520(d) differently from claims made under the reconciliation program, waiving the one-year requirement under the reconciliation program but refusing to do so for § 1520(d) claims. In a footnote and without analysis, the court dismissed this argument, stating that Ford's "entries were not subject to the program and the court's inquiry must focus on the statutory and regulatory scheme which governed [Ford's] entries." *Id.* at 1352 n.5.

Ford again appeals to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

Ford argues that (1) Customs must accept the late-filed COs because it has waived the one-year deadline for filing COs under the reconciliation program, and to do otherwise here would result in two conflicting interpretations of § 1520(d); and (2) that pursuant to 19 C.F.R. § 10.112, Customs is required to accept the late-filed documents because they were presented prior to final liquidation. Because the Trade Court devoted most of its analysis to the latter argument, we begin with § 10.112.

### A

Ford's argument that Customs was required to accept the late-filed COs in this case breaks down into two parts: (1) that § 1520(d) does not expressly require COs to be filed within one year, and (2) that 19 C.F.R. § 10.112 therefore requires Customs to accept the late-filed COs as timely. Customs disagrees on both points. We address each argument in turn.

1

Ford begins by arguing that § 1520(d), when read in conjunction with Customs regulations, does not require importers to file COs within one year. More particularly, Ford argues that although the claim must be filed within one year, the COs may be filed later. We disagree.

The NAFTA agreement could not be more clear: an importer may apply for a post-entry refund "no later than one year after the date on which the good was imported." NAFTA art. 502(3). Application is made by presenting "a written declaration that the good qualified as an originating good at the time of importation" and "a copy of the Certificate of Origin." *Id.* The statute is essentially identical. *See* § 1520(d). The regulations echo this requirement, adding only a reference to the provisions of § 181.22(d) allowing the requirement to be waived under certain conditions. 19 C.F.R. § 181.33. The NAFTA, the statute, and the regulations each reflect the intent of Congress that, at a minimum, these two items must be presented within one year of importation to initiate a claim. *See Xerox Corp. v. United States*, 423 F.3d 1356, 1362 (Fed. Cir. 2005) (citing H.R. Rep. No. 103-361(I), at 38 (1993), 1993 U.S.C.C.A.N. 2552, 2594 ("In order to qualify for such reliquidation, the importer must, within one year after the date of importation, file a NAFTA claim in accordance with the implementing regulations, which includes . . . copies of all applicable NAFTA certificates of origin . . . ."); S. Rep. No. 103-189, at 22 (same)).

The requirement that COs be filed within one year is not negated by the fact that the NAFTA also allows parties to require the submission of "other documentation relating to the importation of the good" as part of the application for refund. *See* NAFTA art. 502(3). Ford suggests that this requirement allows Customs to request additional documentation after an application for refund has been made, and that, at least when the application is

made at exactly one year, such a request would necessarily require Customs to accept documentation after the one-year deadline. We are not persuaded. It is true that, like the NAFTA, § 1520(d)(3) allows Customs to require additional documentation as part of the application. But the ability to require more does not relieve importers from the clear obligation imposed by the NAFTA provisions and statute to file their claim—including the relevant COs—within one year. Furthermore, Customs has in fact exercised its power to require additional documentation, but, contrary to Ford's argument, has applied the same one-year deadline to the additional documents. *See* 19 C.F.R. § 181.32(b)(3)-(5). Taken to its logical conclusion, Ford's argument would permit importers to submit claims under § 1520(d) without any of the required documentation and without regard to the one-year deadline, so long as the required documents were submitted before liquidation. We do not believe § 1520(d)(3) permits such a result.

*Xerox* established that jurisdiction does not exist unless a claim is filed within one year of importation. *Ford II* explained that, when a claim is filed within one year, jurisdiction exists regardless of whether the claim contains the relevant COs. We now hold that submission of the relevant COs within one year of importation is a substantive requirement of § 1520(d), and a claim may be denied if the COs have not been filed within that time and the requirement to file them has not been waived. Ford failed to provide the COs within the one-year deadline in this case. It therefore may prevail only if it can identify some basis upon which Customs was both permitted and required to excuse the deadline in this case.

2

Ford points to 19 C.F.R. § 10.112 as the authority it claims requires Customs to accept its late-filed COs.[3] Section 10.112, which predates NAFTA by several decades, provides that "[w]henever a free entry or a reduced duty document . . . required to be filed in connection with the entry is not filed at the time of the entry . . . , but failure to file it was not due to willful negligence or fraudulent intent, such document, form or statement may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final." 19 C.F.R. § 10.112.

The Trade Court concluded that it could not read § 10.112 to excuse the requirement to file COs within one year. *Ford III*, 800 F. Supp. 2d at 1354 ("The court cannot read § 10.112 to ease the content requirements for claims under § 1520(d) and §§ 181.31-.32 as it would render fundamental aspects of the statute and regulations void."). In particular, Ford's theory "would force the court to read out of the statute and regulations the clear instruction that importers must file 'within 1 year after the date of importation . . . a claim that includes . . . copies of all applicable NAFTA Certificates of Origin.'" *Id.* at 1353-54 (quoting § 1520(d)). The court observed that the importance of the one-year deadline—which was "thrice repeated in NAFTA, the corresponding statute, and Customs' implementing regulations"—was "obvious," *id.* at 1354, and that "the legislative history of § 1520(d) 'overwhelmingly reiterates the one-year time period for

---

[3]    Ford did not seek to file the COs under § 10.112, but makes this argument only in its appeal. In *Ford II*, we reasoned that this argument was properly made on appeal because Customs' denial of Ford's § 1520(d) claim could be viewed as implicitly deciding not to accept Ford's late-filed COs under § 10.112. 635 F.3d at 557.

claiming entitlement to a refund premised on NAFTA eligibility.'" *Id.* (quoting *Xerox*, 423 F.3d at 1362). The court also took note of this court's statement in *Xerox* that "an importer cannot use section 10.112 to circumvent the clear mandate of NAFTA and 19 U.S.C. § 1520(d)." *Id.* at 1353 (quoting *Xerox*, 423 F.3d at 1365). Finally, the court noted that as the specific regulation, § 181.31 (which applies expressly to post-entry claims for refunds of duties) would control over § 10.112. *Id.* at 1354. It rejected Ford's argument that *Aviall of Tex., Inc. v. United States*, 861 F. Supp. 100, 105 (Ct. Int'l Trade 1994), and *Gulfstream Aerospace Corp. v. United States*, 981 F. Supp. 654, 667 (Ct. Int'l Trade 1997), required otherwise, noting that while those cases supported § 10.112's preeminence over other regulatory provisions, "neither address[ed] the issue of whether § 10.112 would apply if its application would render meaningless *statutory* (and treaty-based) requirements." 800 F. Supp. 2d at 1354.

We agree with the Trade Court. As discussed above, the treaty and statute clearly require the COs to be filed within one year of importation. It is true, as the *Ford III* court observed, that the Trade Court has held that § 10.112 is remedial in nature and should be liberally and broadly construed. *See Gulfstream*, 981 F. Supp. at 667; *Aviall*, 861 F. Supp. at 105. But both *Aviall* and *Gulfstream* dealt with § 10.112 in relation to other regulations. Here, reading § 10.112 broadly would conflict with the statute. This it cannot do. Section 1520(d) unambiguously requires the COs to be submitted within one year. Both this court and Customs "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Accordingly, we will not read § 10.112 in a manner that would eliminate the one-year deadline from the statute. *See Xerox*, 423 U.S. at 1365 ("[W]e may not construe 19 C.F.R. § 10.112 to increase the one-year time period for making a post-importation NAFTA claim

. . . .").  The Trade Court was correct that the COs were required to be filed within one year and that § 10.112 did not require Customs to accept them after one year had passed.

B

We now return to Ford's first argument:  that Customs must waive the one-year deadline here because it has done so under the reconciliation program.  Ford contends that to do otherwise would impermissibly apply two different interpretations to § 1520(d).  Customs responds that waiver for the reconciliation program is justified by the requirements that importers must satisfy to be eligible to participate, which it contends are designed to satisfy Customs that covered goods qualify for NAFTA treatment.

As an initial matter, we observe that Customs undoubtedly has the power to waive the one-year deadline for the filing of COs.  As this court noted in *Ford II*, Article 503(c) of the NAFTA explicitly provides that the requirement to present a CO can be waived.  635 F.3d at 555.  In fact, "[w]hile § 1520(d) does not specifically refer to the waiver provision of NAFTA Article 503(c), it is obvious that § 1520(d) was designed in part to permit the implementation of Article 503(c)'s waiver authority via Customs' regulations."  *Id.*  Ford does not dispute that Customs has the authority to waive presentation of the COs; to the contrary, it argues that Customs has properly waived presentation of COs in the reconciliation program, and that it was improper for Customs to claim a lack of authority to exercise its waiver power in this case.

It is undisputed that Ford's request for a refund of duties paid on the Entry was not made through the reconciliation program.  Customs therefore argues, and the Trade Court agreed, that the reconciliation program is not relevant to this proceeding.  *See Ford III*, 800 F. Supp. 2d at 1352 n.5.  We disagree.  It is true, of course, that Ford

did not process its post-entry refund request for the Entry through the reconciliation program, and that the specific waiver requirements of the program do not apply to the entry. But that is not the only way in which the reconciliation program is relevant. When the Entry was imported on June 27, 1997, the reconciliation program had already been announced, but did not yet include post-entry NAFTA refunds. *See* 62 Fed. Reg. 5673. The reconciliation program was modified to include NAFTA eligibility and to waive the CO requirement on Sept. 30, 1997. 62 Fed. Reg. 51181, 51181 (Sept. 30, 1997). This was after the Entry was imported, but before the COs were due. Those modifications became effective on Oct. 1, 1998. *Id.* Ford's claim for post-entry refund of duties paid on the Entry was denied on May 21, 1999. Thus, Customs had announced its intention to waive the CO requirement under the reconciliation program prior to the one-year deadline for the Entry, and the change was effective prior to the denial of Ford's claim for refund. Indeed, the record reflects that Customs has approved Ford's post-entry requests for refunds made through the reconciliation program when Ford did not submit the related COs within one year. The reconciliation program is therefore relevant to the extent that it shows whether Customs applied a different interpretation of § 1520(d) to claims Ford submitted under the reconciliation program than to Ford's traditional § 1520(d) claims—in particular, the Entry.

Absent a reasonable explanation, an agency may not simultaneously interpret the same statute in two different ways. In *Dongbu Steel Co. v. United States*, 635 F.3d 1363, 1365 (Fed. Cir. 2011), we examined the Department of Commerce's ("Commerce") interpretation of an ambiguous statute that could be read to allow Commerce to use or not to use an accounting practice called "zeroing" in antidumping investigations. We had repeatedly affirmed Commerce's practice of using zeroing in both investiga-

tions and administrative reviews. Subsequently, in response to an adverse World Trade Organization decision, Commerce stopped using zeroing in investigations but continued to use it in administrative reviews. In reviewing this new policy, we observed that the statute was ambiguous, and that we had previously held that either practice, on its own, was reasonable. *See id.* at 1372. Furthermore, it was not unreasonable for Commerce to change its interpretation of the statute. However, as a general rule, it was unreasonable for an agency to simultaneously interpret the statute one way in investigations and another in administrative reviews. Where an agency simultaneously applied different interpretations to a statute, it was required to "provide an explanation for why the statutory language supports its inconsistent interpretation." *Id.* Because the record contained no such explanation, we remanded to allow Commerce to explain its reasoning why the statute should be interpreted in two different ways. *Id.* at 1372-73; *see also Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1368 (Fed. Cir. 2001) (remanding for the government to explain why it interpreted the identical language in two related statutes in two different ways); *SKF USA Inc. v. United States*, 263 F.3d 1369, 1381-82 (Fed. Cir. 2001) (holding that to overcome the presumption that the same term had the same meaning in different statutes, Commerce was required to provide a reasonable explanation).

Although Ford raised the argument that Customs applies different interpretations to § 1520(d), the Trade Court has not yet addressed it. In *Ford I*, the Trade Court discussed the facts only briefly before granting Customs' motion to dismiss for lack of jurisdiction on the grounds that the CO had been filed more than one year after the goods were imported. Our reversal of that dismissal in *Ford II* necessarily did not address whether Customs had interpreted § 1520(d) in conflicting ways. In

*Ford III*, the Trade Court dismissed Ford's "conflicting interpretations" argument in a footnote, stating: "[Ford's] reference to Customs' Reconciliation Program, which waives the necessity of submitting certificates of origin with refund claims, is inapposite. [Ford's] entries were not subject to the program and the court's inquiry must focus on the statutory and regulatory scheme which governed [the] entries." *Ford III*, 800 F. Supp. 2d at 1352 n.5 (internal citation omitted). Given this procedural history, it is not surprising that the record provides no explanation for Customs' divergent approaches to exercising its § 1520(d) waiver power.

Customs did provide some indication of its reasoning on appeal. In its brief, Customs argued that the reconciliation program is consistent with § 181.22(d)(1)(i) because Customs satisfies itself that imported goods will qualify for NAFTA treatment when it accepts participants into the reconciliation program. Appellee's Br. 19. It acknowledged that it had waived the one-year deadline under the reconciliation program, but asserted that this was irrelevant. *Id.* at 18-19. When pressed on this issue at oral argument, Customs took a different position, arguing that the fact that importers must apply to and be accepted to the reconciliation program justifies treating reconciliation claims differently from traditional claims. Oral Argument at 19:20, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 12-1186.mp3. But this argument is belied by Customs' minimal requirements for acceptance in the program, as well as by the fact that Ford has had its own entries treated differently depending on which vehicle it used to file them.

The record in this case so far is inadequate to decide whether there is a reasonable explanation for treating traditional § 1520(d) claims differently than § 1520(d) claims made under the reconciliation program. It is clear that importers who participate in the reconciliation

program are treated differently for purposes of waiver under § 1520(d) than those who do not. Indeed, Customs has treated Ford's traditional claims different from Ford's reconciliation program claims. The Trade Court has yet to consider whether this different treatment is simply a valid exercise of Customs' waiver authority—similar to § 181.22(d)(1)(i)-(iii)—or whether it shows that Customs applies different interpretations to the statute depending on the manner in which claims for refunds are submitted. Nor has the court considered whether Customs has a reasonable explanation for treating these classes of claimants differently. Accordingly, we remand for the Trade Court to consider these issues in the first instance. As was the case in *Dongbu*, if Customs cannot provide a reasonable explanation for the different standards, it is "free to choose a single consistent interpretation of the statutory language." 635 F.3d at 1373.

## CONCLUSION

The NAFTA and § 1520(d) require that COs be presented within one year of the date of importation. Customs has the power to waive this requirement, *see Ford II*, 635 F.3d at 555, but did not do so in this case. Yet at the same time, Customs has waived the requirement to present COs for all participants in the reconciliation program. Absent a reasonable explanation, Customs may not exercise its waiver power in a manner that effectively interprets the statute in different ways for different types of post-entry refund claims. Because the Trade Court did not reach this issue, we vacate its judgment and remand for further proceedings in accordance with this opinion.

**VACATED AND REMANDED**

# United States Court of Appeals for the Federal Circuit

---

**FORD MOTOR COMPANY,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-1186

---

Appeal from the United States Court of International Trade in No. 03-CV-0115, Senior Judge Judith M. Barzilay.

---

NEWMAN, *Circuit Judge,* dissenting.

I agree that the statute and regulations require that the refund claim must be filed within one year of importation. However, the issue here is not the timely filing of the claim for refund; the timeliness of that filing is not disputed. The issue is whether the Customs regulation, 19 C.F.R. § 10.112, that permits later filing of a supporting "document" if certain conditions are met, applies to the Certificate of Origin that is required in order to obtain the claimed refund.

*§ 10.112 Filing free entry documents or reduced duty documents after entry.*

Whenever a free entry or a reduced duty document, form, or statement required to be filed in connection with the entry is not filed at the time of the entry or within the period for which a bond was filed for its production, but failure to file it was not due to willful negligence or fraudulent intent, such document, form, or statement may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final . . .

The Court of International Trade sustained Customs' ruling that the Certificates of Origin cannot be filed after the year within which the claim was filed, and this court agrees, ruling that the NAFTA statute bars applying Regulation § 10.112 to NAFTA importations. The NAFTA statute is silent as to any such bar.

The NAFTA statute and regulations do not overrule or qualify or even mention this earlier regulation, although this regulation was not obscure, and has been widely applied in Customs transactions.[1] It cannot be presumed that by silence such an important and useful benefit was intended to be eliminated as to Canada and Mexico even as the purpose of the NAFTA is to support and ease trade with Canada and Mexico. It is not likely that the treaty intended, by silence, to remove this flexibility from the NAFTA nations.

The provisions of the NAFTA statute and regulations, with a one-year limitation for filing refund claims, track similar time-limits in other Customs statutes, which are,

---

[1]    Additionally, applicable regulations do not mandate denial of claims with late Certificates of Origin, but rather provide that the port director *may* deny these claims. *See* 19 C.F.R. §§ 181.23, 181.33.

without dispute, subject to § 10.112. If it were intended that only imports from North American nations would no longer have this flexibility, surely the NAFTA treaty, and the implementing statutes and regulations, would have mentioned it. The court's opinion recognizes that the legislative history is silent, but nonetheless endorses the silent change in law. Silence cannot cancel and withdraw a long-standing provision of applicable law and recognized procedure.

Ford complied with the one-year filing period for all of the refund applications—with a month to spare. In accordance with § 10.112, the "documents"—the required Certificates of Origin—were filed "prior to liquidation." Thus the only appropriate inquiry under § 10.112 is whether there was willful negligence or fraudulent intent in the time of filing, for if not, these documents were timely filed.

Precedent is in accord. In *Gulfstream Aerospace Corp. v. United States*, 981 F. Supp. 654 (Ct. Int'l. Trade 1997) an aircraft parts importer sought duty-free treatment of entries that only became eligible for such treatment under the Agreement on Trade in Civil Aircraft after their reclassification by the United States Customs Service. Customs denied the importer's protest, on the ground that the importer had not filed the required certifying documents simultaneously with parts' entry summaries. At issue was whether 19 U.S.C. § 1520(c)(1) forgave the late certifying documents if filed prior to liquidation. The Court of International Trade held that the importer was entitled to duty-free treatment under 19 U.S.C. § 1520(c)(1), observing that the remedial nature of § 10.112 provided the proper ground for relief:

> At the time [19 C.F.R. § 10.112] was promulgated, Customs stated that the purpose of the regulation was "to relieve certain existing restrictions to the filing of *free* entry documents." This regulation

provides for the late filing of *duty free* entry documents or reduced duty documents *after* entry. The language of 19 C.F.R. § 10.112 does not limit its application to certain documents or exclude certain documents. In addition, Customs did not amend 19 C.F.R. § 10.112 when it promulgated the obligatory language of 19 C.F.R. § 10.183 nor did Customs state that 19 C.F.R. § 10.183 was an exception to the broad remedial effect of 19 C.F.R. § 10.112. Customs promulgated 19 C.F.R. § 10.112 to alleviate onerous filing requirements arising out of the narrow construction of duty entitlements; therefore, 19 C.F.R. § 10.112 should be liberally construed.

*Id.* at 667 (emphases in original) (quoting *Aviall of Tex., Inc. v. United States*, 861 F. Supp. 100 (Ct. Int'l Trade 1994)).

Customs distinguishes *Gulfstream* from this case, arguing that *Gulfstream* was decided under 19 U.S.C. § 1520(c)(1) (since repealed) and by noting that Ford has not claimed that its failure to timely file the Certificates of Origin was the result of a § 1520(c)(1)-type "clerical error, mistake of fact or other inadvertence." Customs also argued that § 10.112 cannot apply because the Certificates of Origin were required "at time of" entry. However, the *Gulfstream* court resolved any distinction between the phrase "at time of" entry and "in connection with" entry, concluding: "The Court finds that Customs' interpretation of the phrase 'in connection with' entry has been inconsistent over time, and Customs' actual practice indicates no intention to create a distinction between this phrase and 'at time of' entry." *Gulfstream*, 981 F. Supp. at 668. Customs' arguments regarding any significant distinction between "at time of" entry and "in connection with" entry in the instant case are equally unpersuasive.

The Court of International Trade, in *Corrpro I*, squarely addressed the issue of whether § 10.112 excuses the late filing of Certificates of Origin for § 1520(d) purposes. *See Corrpro Cos. v. United States* ("*Corrpro I*")*,* 28 CIT 1523 (2004) (not reported in F. Supp.), *rev'd on jurisdictional grounds,* 433 F.3d 1360 (Fed. Cir. 2006). In *Corrpro I* the importer, Corrpro Companies, challenged Customs' determination that merchandise was not entitled to duty-free NAFTA treatment. Corrpro did not claim preferential treatment under NAFTA within one year of the date of importation under § 1520(d). However, Corrpro filed protests to Customs' liquidation under 19 U.S.C. § 1514(a), arguing that the goods were classifiable as free of duty under NAFTA. Adopting the reasoning in *Aviall* that § 10.112 "does not limit its application to certain documents" and should be interpreted broadly, the court held that § 10.112 applies to NAFTA refund claims: "[T]he Court holds that 19 C.F.R. § 10.112 supersedes 19 C.F.R. §§ 181.31 and 181.32 . . . [U]nder [§ 10.112], Corrpro may submit its NAFTA Certificates of Origin, at any time prior to liquidation, barring willful negligence or fraudulent intent in compliance." *Corrpro I*, 28 CIT at 1531.

In *Corrpro II*, this court held that claim-*notice* documents must be submitted within § 1520(d)'s one year limit or the Court of International Trade does not have jurisdiction. *Corrpro Cos. v. United States* ("*Corrpro II*"), 433 F.3d 1360 (Fed. Cir. 2006); *see also Xerox Corp. v. United States*, 423 F.3d 1356, 1365 (Fed. Cir. 2005) ("[A]n importer cannot use section 10.112 to circumvent the clear mandate of NAFTA and 19 U.S.C. § 1520(d) that allows an importer only one year *to file a claim in the first instance* for NAFTA treatment." (emphasis added)).

In both *Aviall* and *Gulfstream* the Court of International Trade stated that "§ 10.112 should be liberally construed" over other regulatory provisions. *Aviall*, 861 F. Supp. at 105; *Gulfstream*, 981 F. Supp. at 667. In the

earlier *Ford* ruling this court rejected Customs' position, and remanded for proper application of the NAFTA provisions. Section 10.112 has never been held to be "meaningless" as applied to NAFTA importations, as the majority now holds.

Precedent supports the distinction between late claims-notice documents, which are non-waiveable "jurisdictional requirements," and the subsequent filing of supporting documents for timely filed claims. *Gulfstream* cites this distinction, noting "[I]t is clear that the regulation [§ 10.112] was promulgated to make the privilege of free entry less onerous by extending the time for filing of claim-*supporting* documents and, thereby, enabling free entry of merchandise that would otherwise have been excluded from such treatment." *Gulfstream*, 981 F. Supp. at 667 (emphasis added); *Mattel, Inc. v. United States*, 624 F.2d 1076, 1079 n.8 (CCPA 1980) (internal quotation omitted).

The majority opinion states that "[t]aken to its logical conclusion, Ford's argument would permit importers to submit claims under § 1520(d) *without any of the required documentation and without regard to the one-year deadline*, so long as the required documents were submitted before liquidation." Maj. Op. at 13 (emphasis added). This is inaccurate. Ford's argument is that a claim exists when the importer files a request with Customs for a refund of duties and alleges its goods qualify for duty-free treatment. Ford argues that a Certificate of Origin must accompany, but is distinct from, the refund "claim."

The Court of International Trade correctly acknowledged that this court, in *Ford II*, distinguished "notice of a party's § 1520(d) claim" from "the accompanying certificate of origin." *Ford Motor Co. v. United States*, 800 F. Supp. 2d 1349, 1352 n.3 (Ct. Int'l Trade 2011). Section 1520(d), working harmoniously with § 10.112, would require claim-*notice* documents to be filed "within 1 year

after the date of importation," and claim-*supporting* documents to be filed "before the liquidation becomes final." (quoting § 1520(d); § 10.112). This consistent interpretation of the statute, regulations and precedent permits the requirements of § 1520(d), § 10.112 and the reconciliation program to legally coexist. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005) (explaining that a statute "cannot, however, be interpreted . . . both [ways] at the same time"); *Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999) (explaining that courts must "attempt to give full effect to all words contained within th[e] statute [and] regulation[s], thereby rendering superfluous as little of the statutory or regulatory language as possible").

In entering into the NAFTA, and as ratified and codified, neither the executive nor the legislative bodies nor any historical documentation we have found reflected an intent to remove the benefit of the pre-existing general regulatory provision of § 10.112. I have unearthed no hint of an intent to add this burden and rigor to trade with Canada and Mexico. The entirety of this history shows a contrary intent, to facilitate such trade.

This view is reinforced by NAFTA Article 503(c) and the subsequently adopted reconciliation program, in which the filing of Certificates of Origin is waived entirely. The policy reflected in this program reinforces the view that it is incorrect to hold that the NAFTA statute removed, from NAFTA importations, flexibilities in filing claim-supporting documentation and access to § 10.112.

The record shows, and Customs does not deny, that Ford worked diligently to meet NAFTA requirements throughout the uncertain implementation of Customs' refund procedures. Certificates of Origin from exporter-suppliers often lagged behind merchandise entries by many months. To account for this, Ford implemented internal procedures to ensure that NAFTA duty-free claims were filed only for eligible parts and materials, and

only after the necessary Certificates were in-hand. Between 1996 and 1997, Customs conducted five separate "NAFTA Origin Verification" audits of all of Ford's NAFTA preference claim activities. The final report of one of the audits stated that Ford's record keeping was a "noteworthy accomplishment." J.A. 154. Ford claims that this meant, among other things, that "Customs knew that Ford had in its possession NAFTA CO's to support all of Ford's NAFTA preference claims." *Id.*

The record also shows that the process for submitting duty-free proof documents varied greatly from port to port, and differed depending on which Customs filing vehicle was used. For example, while Customs in Detroit was denying Ford's § 1520(d) claims for failure to timely file the Certificates of Origin, Customs ports in Buffalo, Laredo, and El Paso were processing and refunding Ford's claims where Ford did not file the Certificates with Customs within one year of the date of entry. At these other ports Ford submitted Certificates of Origin if and when Customs requested that Ford do so. Ford negotiated with Customs for nearly two years in an attempt to establish a mechanism to efficiently submit Certificates of Origin in support of electronically filed claims. Ford seems to have largely coped with Customs' uncertain and inconsistent duty-free refund process despite Customs' belated guidance on filing of Certificates.

At a minimum, if Customs wishes to change its position or remove the application of § 10.112 from NAFTA importations, Customs should have given notice of proposed clear regulations, and enforced a uniform practice at all ports. It is clear that Ford acted reasonably and in accordance with precedent and custom. Although this court now remands to give Customs an opportunity to formulate a post-hoc reasonable explanation for its actions, Customs has had an opportunity to establish its actions as reasonable and has failed. *See* Maj. Op. at 19.

I would hold that Ford's Certificates were timely filed, and end this litigation.