Opinion for the court filed by Chief Judge PROST.
Dissenting opinion filed by Circuit Judge REYNA.
PROST, Chief Judge.
This appeal concerns Customs and Border Protection’s (“Customs”) decision to treat Ford Motor Company’s (“Ford”) duty refund claims under the North American Free Trade Agreement (“NAFTA”) differently depending on whether those claims were filed traditionally or through an electronic process known as “reconciliation.” We previously remanded this long-running dispute to the Trade Court for a narrow inquiry: whether there is a reasonable explanation for Customs’ decision to treat the claims differently. Ford, Motor Co. v. United States, 715 F.3d 906, 917 (Fed.Cir.2013) (“Ford IV”). On remand, Customs first explained that traditional refund claims and reconciliation claims are governed by different implementing statutes; thus, Customs was not inconsistent in its treatment of identical claims. Second, Customs noted that even if both types of claims were governed by the same statute, procedural differences among traditional and reconciliation claims justify treating the claims differently. The Court of International Trade (“Trade Court”) found Customs’ explanation reasonable. For the reasons stated below, we affirm.
Background
We provided a detailed explanation of the background of this case in Ford IV. 715 F.3d at 908-12. Thus, we only briefly recite the pertinent facts here. Ford imported automotive goods into the United States and paid the duties on them. Ford later claimed NAFTA preference on those imports and filed for refund of the duties it paid under 19 U.S.C. § 1520(d). The parties agreed to rely on one entry as the test case: a June 27, 1997 entry via Detroit. Under § 1520(d)’s default procedures implemented by 19 C.F.R. § 181.22, Ford was required to file the certificates of origin within one year of importation. But Ford did not file the certificate of origin until November 5, 1998, beyond the one-year filing deadline. Ford was also unable to secure the port director’s written waiver for the certificates under 19 C.F.R. § 181.22(d)(l)(i). Customs denied Ford’s claim, stating that the “Certificate of Origin was not furnished within one year of the date of importation.” J.A. 224. Ford filed a protest to contest the denial, and Customs denied the protest on the same grounds.
In Ford IV, Ford contended that Customs had an affirmative obligation under its own regulation to accept Ford’s untimely filing of the certificates. We rejected that argument. Ford IV, 715 F.3d at 915. Ford’s only remaining contention was that Customs’ refusal to grant Ford a waiver for the certificates was arbitrary and capricious based on Customs’ waiver of the filing requirement in a separate rec- *1323 oneiliation program. Ford argued that its traditional refund claims, although not processed through the reconciliation program, should nevertheless enjoy the same waiver benefit available through that program. Id. Previously, the Trade Court did not explore Customs’ authority and reasoning for waiving the certificate filing requirement under the reconciliation program because Ford’s claims at issue were not processed through that program. Id. We remanded to the Trade Court to conduct this limited inquiry. Id. at 917.
On remand, Customs explained that the reconciliation program, authorized by 19 U.S.C. § 1484(b), is a procedural means for processing import entries. Ford Motor Co. v. United States, 978 F.Supp.2d 1350, 1353-54 (C.I.T.2014) (“Ford V”). Among the features of the reconciliation program is an ability to claim the substantive duty refund benefit under § 1520(d). Id. Customs explained that the reconciliation program has “a set of statutory safeguards that permit Customs to remedy mistakes and misconduct in awarding duty free treatment under NAFTA.” Id. at 1356-57. Many of the reconciliation program’s statutory safeguards are not available in the traditional post-entry duty re: fund process. Id. at 1356. The Trade Court noted that the reconciliation program provides Customs an added level of confidence in the legitimacy of the importer’s claims. See id. at 1358 (“The record keeping requirements and auditing procedures give Customs well-defined procedures for ensuring the correctness of entries made through the fully automated Reconciliation Program.”). Under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Trade Court concluded that Customs’ interpretation of the statutory scheme entrusted to its administration was reasonable. Ford V, 978 F.Supp.2d at 1352,1359.
DISCUSSION
We review legal conclusions from Customs and the Trade Court de novo, Universal Electronics Inc. v. United States, 112 F.3d 488, 493 (Fed.Cir.1997), subject to any deference owed to Customs’ statutory interpretations, Princess Cruises, Inc. v. United States, 201 F.3d 1352, 1357 (Fed.Cir.2000). We similarly review law of the case de novo. See Laitram Corp. v. NEC Corp., 115 F.3d 947, 950 (Fed.Cir.1997).
When Congress has “explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation, and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.” United States v. Mead Corp., 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (citing Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778). “If a statute is ambiguous, and if the implementing agency’s construction is reasonable, Chevron requires a federal court to accept the agency’s construction of the statute, even if the agency’s reading differs from what the court believes is the best statutory interpretation.” Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 980, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (citing Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778).
On appeal, Ford contends that Customs’ remand explanation violates the law of the case and that it is not reasonable. We address each contention in turn.
A. Law of the Case
Ford argues that this court held in the prior appeals of this case that a single statute, 19 U.S.C. § 1520(d), codifies NAF *1324 TA’s post-entry duty refund claims process. Ford therefore insists that Customs’ remand explanation implicating a different statute violates the law of the case. We disagree.
In our prior decisions, we merely explained that § 1520(d) implements the post-entry duty refund allowed by a particular NAFTA article. See Ford Motor Co. v. United States, 635 F.3d 550, 552 (Fed.Cir.2011) (“Ford II ”). We did not, however, state that it was the only statutory provision that implements the duty refund process. “The law of the case doctrine is limited to issues that were actually decided, either explicitly or by necessary implication, in the earlier litigation.” See Toro Co. v. White Consol. Indus., Inc., 383 F.3d 1326, 1335 (Fed.Cir.2004). Because our prior decisions did not decide that NAFTA’s post-entry duty refund claims process is exclusively governed by § 1520(d), Ford’s contention based on the law of the case is incorrect.
B. Reasonableness of Customs’ Remand Explanation
Ford argues that the Trade Court erred in both affording Chevron deference to Customs’ remand explanation and in finding the explanation reasonable. We disagree on both counts.
1. Trade Court Correctly Applied Chevron Deference
Ford argues that Customs’ remand explanation “conflict[s] with the law of the case, Customs’ published interpretation of the Reconciliation Program, the relevant statutes, and the NAFTA treaty itself.” Appellant’s Br. 16. Ford relies on Bowen v. Georgetown University Hospital, 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), for the proposition that there is no deference “to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice.” Appellant’s Br. 17. Ford therefore concludes that “no deference is owed to Customs’ incorrect interpretation of the NAFTA, § 1520(d), and the Reconciliation Program.” Id. at 17.
The premise for all of Ford’s alleged “conflicts” is that § 1520(d) is the exclusive authority for NAFTA’s post-entry duty refund claims process and that a variety of legal and regulatory authorities have repeatedly said so. See id. at 29-30 (“NAFTA post-entry refund claims submitted through the Reconciliation Program are subject to all requirements of § 1520(d)— including its one-year filing deadline.... In sum, in nearly every published reference to NAFTA reconciliation, Customs includes a citation to § 1520(d).”). But Ford’s contentions are based on a misreading of those legal and regulatory authorities.
It is true that those authorities mention § 1520(d) in discussing the reconciliation program’s feature for claiming post-entry duty refunds. But those authorities do not state that § 1520(d) exclusively governs the procedure for claiming refunds through the reconciliation program, including the ability to obtain a waiver of certificates of origin. Rather, § 1520(d) explicitly delegates authority to Customs to prescribe regulations to govern the refund claims process. 19 U.S.C. § 1520(d). Customs exercised that authority by promulgating 19 C.F.R. § 181.22 to govern the traditionally filed duty refund claims process. Similarly, Customs was duly authorized by 19 U.S.C. § 1484(b) to implement the reconciliation program, a procedural means for processing import entries. Customs has interpreted the various statutes as creating two separate frameworks: one governs Customs’ waiver authority with respect to traditionally filed claims, and the other prescribes the particular *1325 process of waiver with respect to reconciliation-based claims. That interpretation is not inconsistent with relevant statutes, regulations, or administrative practices.
The dissent disagrees and concludes that “Chevron deference does not apply to Customs’ remand explanation.” Dissent at 1331. It argues that Customs’ present reliance on § 1484(b) during judicial review is contrary to its focus on § 1520(d) during the administrative process. Id. (emphasizing Customs’ notice in the Federal Register that reconciliation is a “vehicle by which refunds and certificate of origin waivers are granted under § 1520(d)”); id. at 1332 (“ ‘Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands.’ ” (quoting Bowen, 488 U.S. at 213, 109 S.Ct. 468)). Accordingly, the dissent dismisses Customs’ explanation as merely a “convenient litigation position” not entitled to Chevron deference. Id. (internal quotation marks omitted).
The dissent’s fault-finding is misplaced. In Bowen, the agency’s litigation position was contrary to the agency’s past implementation of the particular statutory provision governing the disputed claims. 488 U.S. at 212-13, 109 S.Ct. 468; see also id. at 209, 211, 109 S.Ct. 468. The context here is far different. First, Ford’s import entries at issue were not processed through the reconciliation program. See Ford IV, 715 F.3d at 915 (“It is undisputed that Ford’s request for a refund of duties paid on the Entry was not made through the reconciliation program.”). Indeed, the controversy over the reconciliation program was initially determined by the Trade Court to be irrelevant. Id. at 912 (noting that the Trade Court dismissed Ford’s reconciliation program argument in a footnote, stating that Ford’s “entries were not subject to the program and the court’s inquiry must focus on the statutory and regulatory scheme which governed [Ford’s] entries” (alteration in original) (internal quotation marks omitted)). Customs thus had no reason to address the argument that it was treating traditionally filed claims differently from those made under the reconciliation program until we specifically remanded to the Trade Court to make that determination in Ford IV. Id. at 916 (noting that, given the procedural history of the case, “it is not surprising that the record provides no explanation for Customs’ divergent approaches to exercising its § 1520(d) waiver power” and remanding to the Trade Court to consider whether “there is a reasonable explanation for treating traditional § 1520(d) claims differently than § 1520(d) claims made under the reconciliation program”). Because the reconciliation program was not previously material to the administrative adjudication of Ford’s claims, Customs’ remand explanation regarding § 1484(b) is not merely a “litigation position.”
Second, there is no allegation that Customs had extended the reconciliation program’s certificate filing waiver to other traditional tariff refund claims but refused to do the same for Ford’s traditional refund claims at issue. The dissent’s and Ford’s reliance on Bowen is therefore misplaced and the Trade Court was correct to apply Chevron deference in reviewing Customs’ remand explanation.
2. Customs’ Remand Explanation is Reasonable
Customs justifies the reconciliation program’s certificate filing waiver based on numerous procedural safeguards not available in the traditional claims process. Ford V, 978 F.Supp.2d at 1356-57. Indeed, it is undisputed,that the reconciliation program has additional safeguards, such as the requirement for importers to *1326 post a continuous bond. That alone is a reasonable explanation for the difference in treatment between traditional claims and reconciliation-based claims.
The dissent dismisses that explanation by citing the availability of other enforcement tools common to both processes. The fact that both processes have some of the same safeguards does not, however, negate the added protection that the additional safeguards provide under the reconciliation program. And, as stated above, there is no dispute that the reconciliation program’s requirement of a continuous bond provides an additional protection for Customs against improper tariff refund claims.
We are satisfied with Customs’ explanation that the differences between the reconciliation program and the traditional post-entry duty refund process warrant different filing requirements. We therefore agree with the Trade Court that Customs’ remand explanation is reasonable. Having satisfied our mandate in Ford IV, our inquiry goes no further.
Conclusion
Customs’ remand explanation provides a reasonable explanation for the different filing requirements in the traditional post-entry duty refund process and in claiming duty refund through the reconciliation program.
AFFIRMED